ALEXANDER *et al. v.* ATLANTA AND WEST POINT RAILROAD COMPANY *et al.*

| 113 | 193 |
| 115 | 401 |

Minority stockholders of a corporation, who, by filing an equitable petition against it and its officers, succeeded in enjoining it and them from doing ultra vires acts which would have required the expenditure of money belonging to it, were not entitled to a judgment for their attorneys' fees against the corporation, when there was, as a result of the litigation, neither a recovery of property for the corporation, nor administration or distribution by the court of any fund brought into its hands for this purpose, and when the corporation itself repudiated the effort of the plaintiffs to thus protect its interests, and, in defense to their petition, stood squarely upon the proposition that the acts in question were not ultra vires, but authorized by its charter.

Argued January 10, — Decided April 24, 1901.

Equitable petition.   Before Judge Lumpkin.   Fulton superior court.   June 8, 1900.

*Lawton & Cunningham, H. A. Alexander,* and *Smith, Hammond & Smith,* for plaintiffs.   *King & Spalding, Dorsey, Brewster & Howell,* and *Joseph B. & Bryan Cumming,* for defendants.

FISH, J.   In 1898 the stockholders of the Atlanta and West Point Railroad Company, in annual meeting assembled, passed, by a majority vote of the stockholders of the company, a resolution that the company should at once apply to the secretary of State for an amendment to its charter, granting to it all the powers and privileges contained in the general law of the State for the incorporation of railroad companies.   An application, in the name of the company, for the amendment, was then made to and granted by the secretary of State.   The railroad company then undertook and began to construct, just outside of the corporate limits of the city of Atlanta, a belt railroad, about six miles long, extending from a point on its main line to a point on the Georgia railroad.   The Central of Georgia Railway Company and certain other minority stockholders of the Atlanta and West Point Railroad Company brought an equitable petition against the latter company and other defend-

13

ants, to prevent the construction of this belt line.   The superior court refused to grant the injunction, and the plaintiffs brought the case to this court, where the judgment of the lower court was reversed, solely upon the ground that the amendment sought to be made to the charter was void, because it was of such a vital and radical character that it could not be engrafted thereon without the consent of all the stockholders of the company, and, without the amendment, the company had no power to construct this belt road. *Alexander* v. *Atlanta & West Point R. Co.*, 108 *Ga.* 151, where, in the opinion of the court, will be found a fuller statement of the case and the contentions of the parties thereto.   After the judgment of this court had been made the judgment of the court below, and before a final decree in the case, the plaintiffs filed an amendment to their petition, in which they alleged that by their action in obtaining the injunction they had saved and preserved for the benefit of the Atlanta and West Point Railroad Company a large amount of money which would otherwise have been dissipated, and had caused to be returned to the treasury of the company the money which had been illegally expended, and that the benefits of their action had accrued to the corporation and all of its stockholders, including those who were defendants, and that, as a matter of law and equity, the corporation was bound, and should be compelled by a decree of the court, to pay all their costs and expenses and all reasonable attorneys' fees earned by their counsel. They prayed that the court would ascertain and determine the amount of said costs and expenses and the reasonable attorneys' fees earned in the cause, and that the defendant corporation be decreed to pay the same.   The attorneys for the plaintiffs joined in the application in reference to the payment of the counsel fees, and prayed that the Atlanta and West Point Railroad Company should be required, by the decree of the court, to pay to them reasonable attorneys' fees for their services in the case, alleging that such services were reasonably worth the sum of $17,500.   The amendment was demurred to, and the court sustained the demurrer and ordered the amendment to be stricken, to which ruling the plaintiffs excepted.   The question for us to determine is whether or not the court erred in sustaining this demurrer.

As a general rule, only the court costs are chargeable to the losing party, and counsel fees and other expenses of litigation, con-

tracted for or incurred by the successful suitor, can not be included in the judgment. Every litigant must pay his own counsel. To this rule there are certain statutory exceptions, none of which are involved in this case. There are also cases where a fund has been brought into court for distribution, or property has been brought under the court's control, as the result of the litigation instituted and carried on by the plaintiff in behalf of himself and others who have a common interest which is represented by him, in which the court will order that the necessary expenses of litigation and counsel fees which he has incurred shall be paid out of the fund which has been brought into court for distribution, or out of property which has been brought under the court's control, as the result of the plaintiff's diligence. So a trustee, being the legal representative of those interested in the trust fund, is usually allowed out of the fund necessary and reasonable expenses, including counsel fees, incurred in the proper management, protection, and preservation of the fund. Plaintiffs in error have cited authorities which sustain this last proposition, but we fail to see the relevancy of the same in the present case. A corporation may be regarded as a trustee for all of its stockholders, and the directors have been considered as quasi trustees for the corporation and their fellow-shareholders; but a stockholder, as such, is trustee for no one. In Hubbard v. Camperdown Mills, 1 So. Rep. 5, where the Supreme Court of South Carolina held that "The attorneys of a minority of the stockholders of an insolvent corporation, who have filed a bill for injunction, receiver, and sale, charging fraud and confederacy on the part of the defendants, are not entitled to have their fees allowed out of the proceeds of sale made by the receiver appointed under the bill," McIver, J., said: "It has been argued here that the plaintiffs 'were, in law and in fact, trustees;' and that having in that capacity brought this action, their expenses in so doing, including the fees of their counsel, are properly chargeable on the assets of the corporation constituting the trust fund. We do not question the proposition that a trustee is entitled to reimbursement out of the trust fund for all expenses properly incurred in preserving or protecting that fund. But we are unable to understand how these plaintiffs can, in any sense, be regarded as trustees. They were simply stockholders in a corporation, holding only a minority of the stock, two of them being creditors to a comparatively small amount. Being in the minority,

they could not control, and therefore would not be responsible for, the management of the affairs of the corporation.  They certainly can not be regarded as trustees for the other stockholders, and, as to the creditors, they simply stood in the relation of debtors to the extent of their interest in the corporation."  In Hand *v.* Savannah & Charleston R. Co., 21 S. C. 162, where the question presented was, who were entitled to fees and costs out of a fund in court, Simpson, C. J., in the course of an able opinion, in which he explains, at length, the governing principle in such cases, says: "The underlying principle in all these cases, where one has been allowed compensation out of a common fund belonging to others, for expenses incurred and services rendered in behalf of the common interest, is the principle of representation or agency.  Where such compensation has been allowed, the party claiming has been in some way the recognized and authoritative representative of the whole, and therefore authorized to contract for the whole."  Again, he gives the true principle in the following words, which have been quoted, and the principle approved and followed by the Supreme Court of South Carolina in several subsequent cases: "No one can legally claim compensation for voluntary services to another, however beneficial they may be, nor for incidental benefits and advantages to one, flowing to him on account of services rendered to another, by whom he may have been employed.  Before legal charge can be sustained, there must be a contract of employment, either expressly made or superinduced by the law upon the facts."

Thompson, in his valuable work on Corporations, vol. 5, § 7056, p. 5586, referring to the quotation last above given, and quoted in the preceding section of the work, says:  "The true principle is that expounded by the Supreme Court of South Carolina, in the quotation given in the preceding section and in other subsequent decisions, that it is only where one party is, under the principles of equity, *entitled* to proceed for the benefit of all who stand in a like *situation* with him, and consequently where the counsel whom he employs stands, in a sense, as *representing* all, that the counsel are entitled to have their fees paid out of the common fund which they have recovered for the benefit of all."  We agree with the South Carolina court and the learned author in holding that this is the true principle which should be applied in such cases.  In the case under consideration the plaintiffs have brought no fund into

court for distribution, nor have they brought any property what-
ever under the control of the court. The court has nothing within
its grasp to dispose of, which furnishes it the opportunity and im-
poses upon it the duty of recognizing and giving effect to substan-
tial equities and existing rights. There are no assets in its hands
for administration and distribution. Though we have examined
numerous cases, we have yet to find one where, in the absence of
statutory provisions applicable to the facts of the case, it has been
held that a court has the power to relieve one party, either in whole
or in part, of the burden of paying his own counsel, by putting that
burden upon another, when no property has been brought under the
control of the court and no fund has been brought into court for
distribution. What is the equity that the plaintiffs set up and upon
which they rely? It is not that they have brought into court some-
thing to be administered and distributed, and that another standing
in like situation as themselves should not avail himself of the fruits
of their diligence without bearing his share of the necessary expenses
which they have incurred; but they allege that, by the suit which
they instituted and prosecuted to a successful termination, they
have saved and preserved for the benefit of the Atlanta and West
Point Railroad Company a large amount of money which, but
for their efforts, would have been expended in the construction of
the belt road, which the company had no legal power to build, and
they have, by the same means, caused to be returned to the treas-
ury of the company a considerable sum which had already been in-
vested in this illegal enterprise. They do not claim that the pro-
ceeding which they instituted and successfully prosecuted resulted
in any order, judgment, or decree of the court which compelled the
return to the corporation's treasury of any money which had been
illegally diverted therefrom. Granted that they have accomplished
what they claim and that by so doing they have really benefited
the corporation, upon what theory can it be held that the court has
the power to compel the railroad company to pay the expenses
which they voluntarily, without its solicitation or authority, in-
curred in bringing about this result? Undoubtedly there are in-
stances in which, owing to the wrongful and fraudulent conduct of
those in control of the affairs of the corporation, stockholders may,
in right of the corporation, bring an action to undo a wrong done
to the corporation; and if they are successful in restoring to the

company money or property of which it has been wrongfully deprived, they may be entitled to have their attorney's fees and other necessary expenses of the litigation paid by the corporation for which they were acting.   A stockholder may always sue when the right of action is directly in himself, and in doing so he simply exercises a right which every person, who is sui juris, has of applying for himself to the courts for the protection of his legal rights.   He may sometimes sue when the right of action is in the corporation, and in doing so he merely represents the corporation, in whose behalf he is permitted to set the machinery of the court in motion.   In cases of the first class, the stockholder, whether successful or not, must bear the necessary expenses which he incurs in the litigation, and can not compel the corporation to defray them, or to compensate him if he has already paid them; in cases of the second class, if he succeeds in the suit, and the corporation receives and enjoys the fruits of his efforts in its behalf, the court can require the necessary expense of the litigation incurred by the plaintiff, including his attorney's fees, to be paid out of the property or fund recovered in the suit.   It is important, therefore, to determine to which class of cases the action brought by the minority stockholders in the case under consideration belongs.   Did the original case as made by the plaintiffs, to the extent that it was sustained by the court, fall within the class in which the right to sue is in the corporation or did it fall within the class where the right to sue is in the complaining stockholder?

In 2 Pomeroy's Equity Jurisprudence, § 1091, it is said: "Whenever the acts of the directors do not consist of any wrongful misuse of the corporate property, or wrongful exercise of the corporate franchise, but are of such a nature that they directly and primarily affect the interest of the stockholders in their shares of stock, by diminishing its value, or impairing their proprietary rights in it, then the stockholders are directly injured and are primarily interested; as the cestuis que trustent whose rights have been violated *they must institute and maintain any equitable suits for relief* against their defaulting trustees; *the remedy is for their benefit and belongs to them alone.*   On the other hand, wherever the breach of trust consists of a wrongful dealing of any kind or in any manner with the corporate property or with the corporate franchises, the corporation itself is directly injured and is primarily interested; as the cestui

que trust whose rights have been violated, *it must institute and maintain any equitable suits for relief* against its defaulting trustees; *the remedy obtained, whether pecuniary or otherwise, is for its benefit, and belongs to it alone.* Under certain special circumstances in cases of this latter kind, where the suit should be brought by the corporation as plaintiff, but it becomes impossible to institute such a proceeding, in order to prevent a complete failure of justice the stockholders are permitted to set the machinery of the court in motion by commencing the action in their own names; but otherwise the suit is treated in every respect as one brought by the corporation. In applying these general propositions, it will be found that there are several distinct classes of cases appropriate for different conditions of fact, and governed by different rules." In the next section the learned author deals with one of these classes, which he designates as the first class, and then, in § 1093, says: "In a second class of cases, where the directors are not charged with any misappropriation of the corporate property for their own benefit, nor with any breach of their fiduciary duty to the corporation, but, although purporting to act for the common welfare, they have adopted, or are about to adopt, some measure which is ultra vires, or beyond the scope of their corporate powers, a suit may be prosecuted against them by the stockholders to obtain the appropriate relief, either of rescission or prevention. . . The theory of this class of suits is, that *a stockholder has a right that the operations of the corporation should be kept by the directors within the powers conferred by its charter;* every measure which transcends those powers, *although done in good faith, violates the rights which inhere in the ownership of stock, and puts the value of the stock itself at hazard.* . The suit may be brought by a single stockholder suing on his own account alone, or by a stockholder suing in behalf of himself and all others who are similarly situated. The corporation is, of course, made a codefendant, and any other corporation or person who has joined in the ultra vires transaction may also be made a codefendant." The italics in these quotations are ours. On the same subject, Judge Thompson says: "Where an action is brought by one or more stockholders to enjoin the performance of ultra vires, fraudulent, or oppressive acts on the part of the directors, the remedy is *preventive,* consisting of an injunction against the performance of such acts, to which may be superadded, in appropriate

cases, other forms of equitable relief. Where, on the other hand, the action is brought to *undo* frauds and breaches of trust already committed and to restore to the corporation assets thereby wasted, the action does not, as in the former case, proceed in right of the stockholder, but it proceeds *in right of the corporation;* and consequently whatever is restored accrues to the corporation, and the law at once attaches to it the character of a trust fund, for the creditors of the company first, and for its stockholders next, in which all share ratably and in respect of which no one gets a preference over the other, not even the stockholder who takes upon himself the burden of prosecuting the suit which results in its restoration." 4 Thomp. Corp. 4491.

Under these authorities, into which class of cases does the suit brought by the minority stockholders in the present case fall? Were they suing in right of the corporation, or in right of themselves as minority stockholders? What was the real gist of their action, the ground upon which they were entitled to and obtained the relief for which they prayed? It is found in the 18th and 21st paragraphs of the petition as amended. These paragraphs set forth the real gravamen of their complaint, the cause of action upon which the injunction was granted. The 18th paragraph alleges: "The petitioners in this case, for valuable consideration, bought their stock in said Atlanta & West Point Railroad Company, long prior to the 13th day of September, 1898, in view of its charter rights, and because of its contracts so made with the State of Georgia as to its franchises, and because these petitioners, by the fact of holding the obligations of said Atlanta & West Point Railroad Company, were entitled to certain rights, and affected only by certain liabilities, growing out of and fixed in said charter of the Atlanta & West Point Railroad Company." The 21st paragraph is as follows: "The said action of the stockholders and directors was illegal in this: a majority of the stockholders of the Atlanta & West Point Railroad Company had no right, as against said minority petitioners, to make any such change in its articles of incorporation, because it was a material and fundamental change in the contract between the State of Georgia and the corporation, and between the corporation and these petitioners. If of force, it was a material and essential alteration of said original contract, and does not in any way bind these minority petitioners, because it impairs the ob-

ligation of the contracts of said Atlanta & West Point Railroad Company with the State of Georgia, and the said contracts of these petitioners with the Atlanta & West Point Railroad Company, by giving new powers, and by creating new liabilities and new obligations not embraced under their original contract. This can not be done under said general law, because it is a violation of the constitution of the United States, article one, section ten, and of the constitution of the State of Georgia, article one, section three, paragraph two, each of which constitutions, at said cited places in them respectively, forbids the passage by the legislature of Georgia of 'any law impairing the obligation of contracts.'" The sole ground upon which the injunction was granted was that the building of the belt railroad by the Atlanta and West Point Railroad Company would be an ultra vires act, which the plaintiffs, as dissenting stockholders, had the right to prevent. They had the right to stand upon the implied contract that the charter of the corporation would not be vitally and radically changed without their consent, and that the corporation would not engage in any enterprise not authorized by its charter. This they did, and appealed to the court to protect them against a violation of their rights; and it was for the protection of their rights that the court granted the injunction. Whatever they may have said in the original petition as to the injury which the corporation would suffer if its funds were used in the construction and operation of this belt line, reduced to its last analysis, the true merit in their case, upon which the court acted in granting the relief for which they prayed, was that the building of the belt line, not being within the powers granted to the corporation in its charter, would violate the rights which inhered in the ownership of their stock. It was because it would violate those rights that the court granted the injunction for which they prayed. Their suit was not for the corporation, but for themselves. They were not seeking to recover for the corporation any of its assets of which it had been wrongfully and fraudulently deprived, nor were they seeking to undo any wrong whatever which had been done to the corporation. The solid ground upon which they stood was that, without their consent as stockholders, the amendment to the charter was a nullity, and without the amendment the building of the belt line would be a violation of their rights as stockholders in the corporation. The corporation did not authorize them to employ the

attorneys who represented them, nor have they, through the court, recovered anything whatever for the corporation, from the acceptance of which by the corporation an obligation on its part to pay the necessary expenses of litigation incurred by them might be implied. There is, therefore, no ground upon which to found even a plausible presumption that in prosecuting the suit they were acting as agents of the corporation.

Counsel for the plaintiffs in error cite, "as absolutely conclusive" in their favor, "the remarks of Mr. Pomeroy, in his work on Equity Jurisprudence, in § 1095 of the third volume," and quote extensively from this section of the author's valuable work. We think counsel have misunderstood the author's meaning. We have already shown, in the two sections which we have quoted from this work, that, according to this eminent authority, the right to sue in a case of this character is in the stockholder and not in the corporation, and, rightly understood, there is nothing in the section quoted by counsel which conflicts with those which we have quoted. The learned author does not here contradict himself. In the section upon which counsel rely he says: "Wherever a cause of action exists primarily in behalf of the corporation against directors, officers, and others, for wrongful dealing with corporate property, or wrongful exercise of corporate franchises, so that the remedy should regularly be obtained through a suit by and in the name of the corporation, and the corporation *either actually or virtually refuses* to institute or prosecute such a suit, then, in order to prevent a failure of justice, an action may be brought by and maintained by a stockholder or stockholders, either individually or suing on behalf of themselves and all others similarly situated, against the wrong-doing directors, officers, and other persons; but it is absolutely indispensable that the corporation itself should be joined as a party — usually as a codefendant. The *rationale* of this rule should not be misapprehended. The stockholder does not bring such a suit because *his* rights have been *directly* violated, or because the cause of action is *his*, or because *he* is entitled to the relief sought; he is permitted to sue in this manner *simply in order to set in motion the judicial machinery of the court.*" The italics here are the author's. "The *rationale* of this rule should not be misapprehended," as it seems to have been by the learned counsel for the plaintiffs in error. In the present case the stockholder does bring

the suit because *his* rights have been directly violated; he does bring it because the cause of action is *his;* he does bring it because *he* is entitled to the relief sought. He is not merely "permitted to sue in this manner simply in order to set in motion the judicial machinery of the court," in behalf of the corporation, but he has a right to sue because his contract has been violated and his rights are imperiled. He is not compelled, as in the class of cases with which the author deals in the section of the work quoted by counsel, before bringing his suit, to ask the corporation to institute the suit, and, when bringing it, to allege such a request and a denial of the same, or to furnish a reason why he did not make it. He stands upon his own rights, and not those of the corporation. He does not come into court as the agent of the corporation, nor is he overshadowed by it; he does not represent it, but represents himself. His position is this: "When I acquired the stock which I hold, I did it upon the faith of the then-existing charter of the corporation, and this charter can not be legally changed, in a vital and radical manner, without my consent. I have not consented for it to be so amended, and without the amendment the act which I seek to enjoin is beyond the power of the corporation. I stand upon my rights as a stockholder, based upon the contract which the law implies exists between the corporation, the other stockholders, and myself, and I ask the court to protect me against a violation of this contract." Coming into court upon such a proposition as this, he needs, as we have said, no permission to sue, "simply in order to set in motion the judicial machinery of the court," for the protection of the corporation, for he comes in his own right and upon his own cause of action. He can stand alone if he chooses, or he can sue in behalf of himself and all other stockholders who are similarly situated, and who see fit to come in and join with him in the action; but he can not make those who neither authorize nor adopt his suit contribute to the payment of the necessary expenses which he has paid or incurred in its prosecution.

Counsel for the plaintiffs in error cite a number of cases in support of their contention. They say: "There was no fund in court in Meeker *v.* Winthrop Iron Co., 17 Fed. Rep. 48. When the expenses of litigation were allowed there, nothing had been done except the cancellation of a lease which had been adjudged to be unlawful. There was no property in court." We have read that case

very carefully, and are of opinion that it fails to sustain the contention of plaintiffs in error.   In that case the plaintiffs sued in right of the corporation, to undo a wrong done to it, and succeeded in having a fraudulent lease of its property cancelled.   The court appointed a receiver to take charge of and superintend the company's business, and required the defendants to account with the corporation for certain rents and profits; and in the administration of the trust fund, the control of which it had thus acquired, the court decreed that the plaintiffs, having prosecuted the suit "for the common benefit of all the parties interested, to protect and preserve the trust fund, were entitled to be reimbursed therefrom for all proper expenditures made or liabilities incurred in and about the prosecution of the same."   There may have been no property in court at the precise moment when the expenses of litigation were allowed to the plaintiffs, but the same decree which provided for the allowance of these expenses also provided for the appointment of the receiver.   The court took charge of the company's business, cancelled a fraudulent lease of its property, and decreed that the minority stockholders who had come to the rescue of the corporation and brought its business and property under the jurisdiction and control of the court should be reimbursed the necessary expenses which they had incurred in the suit which had brought about these results.   Though, from the necessity of the case, the suit had to be instituted and carried on by the minority stockholders, it was clearly in the right of the corporation and the recovery was for the corporation.   Another case cited is Decatur Mineral Land Co. *v.* Palm, 113 Ala. 531, 21 So. Rep. 315.   That case was clearly one in which the minority stockholders were suing to undo a wrong done to the corporation by certain directors thereof, who had neglected their duty to the corporation and had appropriated "exorbitant and unreasonable amounts" of the company's funds in the payment of salaries to themselves.   The opinion of the court clearly shows that it was a suit which the stockholders could not bring in their own right, but which could only be brought in right of the corporation, the corporation being the only proper complainant in such an action.   Coleman, J., delivering the opinion, after stating the case, said:   "It will be seen from this statement of the purposes of the bill that the corporation is the proper complainant, and that stockholders are not allowed to apply to a court of

equity for relief in such a case, except upon averment and proof that the corporation has refused to remedy the wrong, or upon sufficient averments to show that application to the board of directors or stockholders would have been in vain, or the circumstances were such as to excuse the complaining stockholders from seeking a remedy in this way, if there can be any other in any case." It was upon this ground that the court reversed the judgment of the court below, which overruled a demurrer based thereon, and for this reason the court said: "Ordinarily, we would render decree here annulling the decree of the court below, and dismissing complainants bill;• but we find difficulties, owing to the condition of the case as presented in the abstract, when submitted for final decree." It is true that the court did hold that, "Where minority stockholders, by suit, obtain a cancellation of claims against the corporation, and an injunction restraining the directors from voting excessive compensation to officers, the complainants are entitled to a reasonable solicitor's fee, to be paid by the corporation;" but as the court held that the demurrer to the bill, for the reasons indicated above, should have been sustained, we do not see how the question with reference to the plaintiff's attorney's fees was properly before it for determination. However that may be, the suit, as the court decided, was one which could only stand in court in right of the corporation, and which the stockholders could not bring in their own behalf.

Another case cited is Grant v. Lookout Mountain Co., 93 Tenn. 691, 28 S. W. Rep. 90, where the corporation was held liable for the reasonable attorney's fees of the plaintiffs, who were minority stockholders. There the suit, though brought by these stockholders, was, in the language of the court, "to all intents and purposes, the suit of the corporation itself," and the whole of its property, both real and personal, which had been illegally conveyed away, "threatening the entire destruction and dissolution of the corporation," was recovered and restored to the corporation. The court said it was a suit which the corporation ought to have commenced, that it was an indispensable party thereto, and that, for this reason, the decree was not recovered for the minority stockholders, but for the corporation. In the case of Fox v. Hale & Norcross S. M. Co., 108 Cal. 475, a single stockholder successfully prosecuted a suit to undo a wrong done to the corporation, and to recover from the wrong-

doers· a large amount of money of which the corporation had been deprived by means of a fraudulent conspiracy between the directors and others.   The defendants took the main case up (see 108 Cal. 369), and the branch of the case which counsel cite went to the Supreme Court upon a separate appeal, by the corporation, "from that part of the judgment appointing a receiver of the moneys collected on the execution, and directing him to pay the plaintiff's attorneys, as compensation for their services, twenty-five per cent. of all moneys so collected."   After the appeal was taken, it was "voluntarily dismissed by the appellant, so far as the amount of the allowance to attorneys [was] concerned," so that it stood "as an appeal from that part of the decree appointing a receiver, and [involved] only the question of the power of the court to make such appointment."   Beatty, C. J., delivering the opinion, said:   "There is no doubt, we think, that the case was one in which the court had power to appoint a receiver to carry its judgment into effect.   The action was not prosecuted by the plaintiff in his own right or for his exclusive benefit.   He sued in behalf of the corporation to recover a fund in which others were equally interested, and the judgment in his favor was for the use ·and benefit of the corporation.   He was, therefore, not entitled to receive the amount of the judgment himself, but clearly was entitled to an allowance, out of the moneys collected, of his reasonable expenses including counsel fees."   Manifestly that case is in no way in conflict with the conclusion at which we have arrived in the one before us.   Counsel cite another case, ·decided by the same court, which needs no comment at our hands to show that it does not sustain their contention.   We simply quote all that is said in the brief of counsel in reference to that case, italicising the salient feature thereof.   "In a California case, a stockholder *suing in behalf of the corporation recovered certain funds from defaulting directors.*   The concluding paragraph of the opinion is: 'The order is reversed, with directions to the trial court to enter the order prayed for, after making reasonable allowance to plaintiff Chetwood for his costs, disbursements, and attorney's fees in the said action, as contemplated by law.'"   · In Davis *v.* Gemmell, 73 Md. 530, 21 Atl. Rep. 712, cited by plaintiffs in error, "minority stockholders of a corporation brought a bill to prevent an asset of the corporation from being appropriated by the majority stockholder to his own use;" and obtained a cancellation of a

fraudulent assignment of the same by the majority stockholder to third parties. The asset in question was a judgment against a railroad company, "which was required to and did bring into court the greater portion of the amount due on the judgment." The parties to the case, including the corporation owning the judgment, "consented that the funds should be distributed" by the court under the proceedings pending therein, and the court, in distributing the fund, allowed and required the counsel fees incurred by the minority stockholders to be paid out of the fund. Certainly there is a very wide difference between the facts in that case and those in the case in hand. There the wrong which was righted through the suit prosecuted by the minority stockholders was a fraudulent conversion by the majority stockholder of valuable property belonging to the corporation, which was recovered for the corporation, and the fund derived therefrom was in court for distribution. Nothing more need be said to show that the principle deducible from that case does not control in the one which we have under consideration.

Counsel for plaintiffs in error quote from Kernaghan v. Williams, L. R. 6 Eq. 228, some remarks of Lord Romilly, M. R., at page 231, in delivering the opinion of the court: "If Mr. Williams [a complainant minority stockholder] is right in the suit which he has instituted, he will obtain a decree, and he will obtain, as the results of the suit, the costs; if he is not right, then he will not; and this, unquestionably, is certain, that if he succeeds, when the suit is over, the company can not come and claim the amount of funds recovered by that suit for their benefit, without paying the expenses incurred." We fail to see the relevancy of this citation. The question whether the corporation could be compelled by the court to pay the necessary expenses incurred by the minority stockholder in the suit which he had instituted was not directly involved in that case, and the opinion of the master of the rolls as to the rule which would be applied, in the event certain contingencies with reference to that suit should occur, is a well-recognized one and not in conflict with the views which we have expressed. In the present case the corporation has not come forward to claim anything, as the result of the suit instituted by the minority stockholders, and if it had, it would have found nothing to claim, for no fund or property has been recovered. Another case to which we are referred is Trustees v. Greenough, 105 U. S. 527. There a large holder of the bonds

of a railroad company brought suit, in behalf of himself and the other bondholders, against the trustees of a fund which was pledged for the payment of the interest accruing on the bonds and instalments of the sinking fund for meeting the principal, "to rescue that fund from waste and destruction, arising from the neglect and misconduct of the trustees, and to bring it into court for administration according to the purposes of the trust;" and all this was done, at great expense and trouble on the part of the complainant, and the other bondholders came in "and participated in the benefits resulting from his proceedings." The decision, allowing the complainant his counsel fees and other necessary expenses of litigation out of the fund in court, rests upon the principle announced in the third headnote to the case, that "A trust fund must bear the necessary expenses of its administration." The case of Central Railroad Co. *v.* Pettus, 113 U. S. 116, also relied on by plaintiffs in error, where "the property was brought under the direct control of the court to be administered for all entitled to share in the fruits of the litigation," and where the solicitors of the complainants were "allowed reasonable compensation in respect of the demands of unsecured creditors (other than their immediate clients), who filed their claims" and shared in the common benefits secured to their class through the suit instituted and successfully prosecuted by the complainants, was held to fall within the principle announced in the Greenough case. It is very apparent to us that neither of these two cases decided by the Supreme Court of the United States affords authority for sustaining the contention of the plaintiffs in error. One marked difference between them and the case in hand is, as before remarked, that here no trust fund or property has been brought under the control and administration of the court; and another is that, in each of those cases, the plaintiff, or plaintiffs, sued for an entire class, the other members of which came forward and participated in the fund which had been recovered for all.

Because the building of this belt line would have been an ultra vires act on the part of the corporation, we do not think it necessarily follows that the funds of the company invested therein would have been dissipated or lost. So far as we are informed, if the belt line had been built and operated by the company, the enterprise might or might not have proved to be a profitable one. It is urged, in one of the briefs for the plaintiffs in error, that if this belt road

had been built, the corporation would have been in danger of having its entire charter forfeited on suit by the attorney-general. There would have been no danger from this source; for the State, through its appropriate department, having granted the application for the amendment to the charter, which, if valid, would have authorized this action by the corporation, could not, after the corporation had exercised the powers which the State purported to confer upon it, have forfeited the charter because of the exercise of those powers.　The minority stockholders, who had not consented to the amendment to the charter, had the right to complain when the corporation undertook to exercise powers which the amendment purported to confer upon it; but the State, which had, so far as it could, granted the amendment, could not complain.　It is claimed that the action brought by the plaintiffs "resulted in having returned to the treasury of the company a large sum, amounting to about $55,000, which had been expended in carrying forward the illegal project before suit was brought," and that, at least, as to this sum they are entitled to have their attorneys' fees paid by the corporation.　Suppose, in consequence of the plaintiffs' suit, a large sum of money, which had been expended in the ultra vires undertaking, was returned by the directors of the company to its treasury; it was not brought into court and from thence returned to the company's treasury, nor did the court do anything whatever to compel its return.　The court did nothing but grant an injunction restraining the company from building the belt railroad, and thus preventing any further expenditure of the company's money thereon.　The court did not deal with the money which had already been spent, and its return to the company's treasury, so far as the court was concerned, was purely voluntary.　The plaintiffs neither sued to recover, nor did they seek to compel the return of, any money belonging to the corporation, and the only legal result of their suit was the injunction.

*Judgment affirmed.　All the Justices concurring.*