## Burley Tobacco Company v. Vest, et al.

(Decided September 29, 1915.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1.  Corporations—Institution of Suits by Officers and Directors.—It
    is the duty of the officers and directors of a corporation to in-
    stitute and maintain suits in the name of the corporation for the
    redress of any wrongs done to a corporation, in its property or
    franchises, and it is the exclusive right of such officers and di-
    rectors to institute and conduct such suits, except in instances,
    where they refuse, after proper demand, to do so, or else their
    relationship to the subject of the controversy, or the adversary
    party is such, that their interests are antagonistic to the cor-
    poration, or they could not be expected to properly care for the
    interests of the corporation, in which event, a suit may be in-
    stituted and maintained by a stockholder for the corporation, and
    where the demand to sue on account of the relationship of the
    officers and directors to the subject of the controversy or ad-
    versary party, would be a vain thing to do, no demand need be
    made upon them to sue, before instituting a suit by a stockholder
    for the corporation.
2.  Corporations—Institution of Suits by Officers and Directors—Costs.
    —If the officers of a corporation, in their discretion, think it a
    prudent thing to do, to institute a suit for the corporation, the
    corporation is bound for its costs and attorney's fees, although it
    may turn out that the officers were mistaken.
3.  Corporations—Institution of Suits by Officers—Costs.—If the offi-
    cers of a corporation refuse to sue, after demand made upon them
    to do so, or if their relationship to the subject of the controversy
    or the adversary party, is such, that their interests are antagonistic
    to the corporation, or it would be improper for the suit to be
    conducted by the corporation, while it is controlled by such officers,
    and a suit is instituted for the corporation by a stockholder, and
    it results in a substantial recovery for the corporation, or a fund
    belonging to the corporation is brought into or under the control
    of the court, for administration or distribution, a contract is im-
    plied, that the corporation shall pay the costs, and fees of coun-
    sel, who have conducted the litigation; but if the litigation re-
    sults in the recovery of neither money nor property for the cor-
    poration, nor the bringing into or under the control of the court of
    a fund for administration or distribution, then there is no obliga-
    tion of the corporation to pay costs or counsel fees.
4.  Corporations—Wrong Done to Property of—Suit for Redress by
    Stockholder.—A wrong done to the property of a corporation, or
    of any of its franchises, or a miuse of the property or franchises
    of a corporation, is a wrong done to the corporation, and a suit to
    redress it, is the suit of the corporation, but a wrong done to a

stockholder in his shares of stock, or the impairment of his rights in them, is the personal grievance of the stockholder, and a suit to redress the grievance, is the suit of the stockholder, and he must institute and maintain it.

5. Contribution—Who May Maintain Action for—Section 489 Kentucky Statutes.—Under section 489, Kentucky Statutes, no one can maintain a suit for contribution, except a legatee, distributee, devisee, or party in interest, who has prosecuted a suit for the benefit of himself and others, who have a common interest with him, to a successful termination, and the result of the litigation has been a recovery for all who have a common interest with the one prosecuting the suit.

E. C. O'REAR, ALLEN & DUNCAN, D. L. PENDLETON and ROBT. C. SIMMONS for appellant.

TOMLIN & WEST and W. A. BYRNE for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

In the year 1909, E. B. Stansifer and W. H. Hudson, and about forty thousand other persons, in Kentucky, Indiana, and Ohio, entered into an agreement with the Burley Tobacco Society, by which they pledged themselves to deliver to the Society all the burley tobacco grown by them, to be handled, prized, stored, and sold by the Society, as their agent. The Burley Tobacco Society was a corporation organized under the provisions of Article VIII, Chapter 32, Kentucky Statutes. A part of the contract provided that the poolers subscribed for stock in the Burley Tobacco Company, thereafter to be incorporated, to the amount of 10% of the gross sales of the tobacco pledged to the Burley Tobacco Society, and authorized the Society to pay for stock out of the proceeds of the sales of the tobacco. The tobacco, which was pledged to the Society, under this contract, by Stansifer, and Hudson, and the forty thousand other persons, when sold, produced a sum sufficient, that 10% of its gross proceeds amounted to the sum of $1,050,497.69, which was used by the Burley Tobacco Society in paying for the stock in the Burley Tobacco Company, for each subscriber to the contract an amount of stock equal to 10% of the proceeds of the sales of his tobacco, respectively. Thus each person who was a subscriber to the contract, and for whom the Burley Tobacco Society sold tobacco, became a stockholder in the Burley Tobacco Company, when the Company was organized.

The directors of the Burley Tobacco Society, as individuals, became the incorporators of the Burley Tobacco Company. The articles of incorporation were first entered into on October 22nd, 1909, and provided that the name of the corporation should be the Burley Tobacco and Insurance Company, and contained a clause providing that the corporation might insure the tobacco pledged with the Burley Tobacco Society, but on December 23rd, 1909, the incorporators adopted amended articles of incorporation, by which the name of the corporation was changed to the Burley Tobacco Company, and eliminated the insurance provisions. The purposes of the corporation were declared to be. the acquisition by purchase, pledge, or otherwise, the handling, manufacture, and marketing of tobacco in all its forms; to acquire, make, use, enjoy and dispose of everything necessary or useful or convenient in the manufacturing or marketing of tobacco, in all its forms; to acquire such realty, as might be necessary, by gift, purchase, or lease, necessary, useful or convenient for the establishment, maintenance, or operation of warehouses for the handling, storage, or other use of tobacco, and all of its products and by products; to establish and maintain warehouses; to do general warehouse business; to loan or pledge the credit, money or property of the corporation, in aid of the purposes of the organization; to do a general warehouse business, and to do all other acts necessary for or in aid of the purposes or business of the corporation, or the Burley Tobacco Society. The capital stock was fixed at $2,000,000.00, divided into shares of $1.00 each.

The directors were to be elected upon the first Tuesday after the first Saturday of October, in each year.

The fourth clause of the articles of incorporation, as amended, provided that the shares of stock should be issued to the several beneficial owners of it, but the voting power of the stock should be invested in the individuals, who might constitute from time to time the District Board of the Burley Tobacco Society, who should continue to act until their successors should be elected and qualify.

The seventh clause of the articles of incorporation provided that the incorporators should act as directors of the corporation until the annual election provided for, in 1910, and until their successors should be elected and qualify.

The articles were duly acknowledged, filed, and recorded, and the corporation organized. Drake v. Herndon, 122 Ky., 206; Walton v. Riley, 85 Ky., 413. The incorporators, by virtue of article seven, of the articles of incorporation, assumed to act as directors and to perform the duties of directors, until Tuesday, after the first Saturday in October, 1912, the persons constituting the District Board of the Burley Tobacco Society had a meeting, at which they elected directors and officers for the Burley Tobacco Company, by virtue of the fourth clause of the amended articles of incorporation. The same persons were elected directors of the Company, as constituted the District Board of the Burley Tobacco Society. The original incorporators of the Company, who had acted as directors up to this time and the directors elected at this time, had purchased a manufactory of tobacco, for the price of $600,000.00, and had purchased and leased warehouses, and operated the manufactory, for and in the name of the corporation, and took title to the properties purchased and leased in the corporation, and, in all respects, performed the duties of directors of the corporation.

In October, 1912, E. B. Stansifer and W. H. Hudson, as stockholders in the Burley Tobacco Company, filed their petition in the circuit court of Kenton County, and thereafter an amended petition, against the persons, who were acting as directors of the Burley Tobacco Company, and against the Burley Tobacco Society. In substance, they alleged that they were stockholders in the Company, and that in fraud of their rights as stockholders, and of the other forty thousand stockholders, each of whom had a common interest with them, the incorporators of the company provided in its articles of incorporation, that the incorporators should act as directors until the annual election, in 1910, and until the election and qualification of directors, and that the voting power of the stock should be invested in the persons, who might compose the District Board of the Burley Tobacco Society; that the stockholders had never been notified of a meeting to elect directors; that the defendants had been assuming to act as directors, illegally and without authority of law, and had received $1,050,-497.69, belonging to the stockholders, from the Burley Tobacco Society, and had spent it, all except $200,000.00, in purchasing manufactories and warehouses, and for other purposes unknown to the plaintiffs; that the defen-

dants had no right to make the said investments; that the defendants refused to allow an inspection of the books of the Company; that the Burley Tobacco Society had ceased to be a going concern; that a majority of the stockholders of the Company desired a dissolution of the Company; that the defendants are now and have at all times been assuming to be directors of the Company, but are in fact usurpers; and that they brought their suit on behalf of themselves and all the other stockholders of the Company. They then prayed, that the court adjudge that the defendants are not and have never been legal directors of the Company; that their acts have all been void, and do not affect the rights of the stockholders; that the books be turned over to an officer of the court, that they might be inspected; that such officer be directed to ascertain the names of all the stockholders, and whether or not a majority of them desired a dissolution of the corporation, and if so, the officers proceed to wind up the affairs of the corporation, and pay the stockholders the amounts due them, after the payment of costs; that if a majority of the stockholders are opposed to a dissolution, then the officer of the court be directed to hold an election for directors, at which the stockholders may vote their stock, and elect a legal directory, and that the affairs of the corporation be turned over to a legally elected board of directors; that the receiver or commissioner of the court ascertain which of the defendants are liable to the stockholders, and that the court require such persons to pay over to such receiver an amount equal to the capital stock; and adjudge that plaintiffs be permitted to examine the books, in any event; to adjudge that the stockholders have a lien upon the manufactories and warehouses and other property acquired for the corporation by the defendants to secure the payment of the sums due them for the capital stock. By a third amended petition, the Burley Tobacco Company was made a party plaintiff, and the same allegations made for it as a corporate entity, and the same relief prayed for it, as was asked for the stockholders, in the original and first amended petition.

The plaintiffs moved the court to appoint a receiver for the property and assets of the corporation, but upon a hearing, this motion was overruled by the court.

The defendants filed an answer, and offered to file an answer for the Burley Tobacco Company, but upon objec-

tion, the court overruled the motion and refused to allow the answer for the Burley Tobacco Company to be filed.

The plaintiffs then dismissed so much of their action as sought any personal recovery against the defendants. This was done upon an agreement, that plaintiffs institute another suit against defendants embracing the matters, which were dismissed from this action. The plaintiffs did so, and again sought in that action the appointment of a receiver, but the court overruled the motion.

This cause was then submitted for trial, and the court adjudging that the sole issue in the suit, was whether the provisions of the charter relating to the method of electing the board of directors were legal and valid, under the constitution and statutes, held that the provisions were invalid and void, and that the defendants were not and had never been the legally elected or constituted board of directors, and appointed commissioners, who were directed to conduct an election by the stockholders of a board of directors, which was done, and resulted in an election of a board composed of substantially the same persons, who had theretofore been acting as directors. Before this election, however, the defendants appealed from that judgment to this court, which resulted in its affirmance, Lebus, et al. v. Stansifer, et al., 154 Ky., 444. The stockholders at the election, also, adopted a resolution, ratifying the acts of defendants as directors up to that time, and expressing their disapproval of the second suit, which plaintiffs were maintaining, and their desire to have it discontinued, and it was thereafter dismissed.

The attorneys, who conducted these suits for the plaintiffs, were the appellees, John L. Vest, J. G. Tomlin, and W. A. Byrne, who, thereafter, entered a motion to have a fee allowed them for their services, and to adjudge that the Burley Tobacco Company pay it. The court adjudged that the Burley Tobacco Company pay to them for their services, a fee of $10,000.00, to which the Company objected and excepted, and prayed an appeal to this court.

The question before this court for determination, is whether, under the facts, the appellees are entitled to have the Burley Tobacco Company pay the fee for the services rendered by them for their clients. That the services were skillful and required learning and faithfulness to duty, there is no doubt, and that they should be remunerated for them, there is no doubt, but the question for determination is, was the court below in error, in

adjudging that the appellant is liable to them for the services?

It is the duty and the right of the officers and directors of a corporation to institute actions in the name of the corporation for the redress of any wrongs done, either to the property or franchises of the corporation, and for the purpose of preserving and defending its property and franchises, and to defend in its name actions brought against it, which, in the exercise of good faith, they believe ought not to succeed. The officers and directors of a corporation have the exclusive right to institute and defend suits affecting the corporation, in its property or franchises, except where the corporation has a cause of action or a good defense to a suit against it, and the officers and directors refuse to institute the suit for it, or to defend one against it, after demand has been made upon them to do so. The demand may be dispensed with, if the officers have such relations to the acts complained of, or bear such relations to the adversary party, as to show their interests to be antagonistic to the corporation, or that it would be improper for the action to proceed in the name of the corporation while it should remain under their control, in which state of circumstances, an action may be maintained or a defense made for the corporation by a stockholder. 11 Cyc., 995; Shawhan, et al. v. Zinn, et al., 79 Ky., 300; Morantiz on Corporations, Sections 239-241; 10 Cyc., 798; Chilton v. Bell Co., 153 Ky., 775; Louisville Bridge Co. v. Dodd, et al., 85 S. W., 683; 27 R., 454; P. C. C. & St. L. Ry. Co. v. Dodd, 115 Ky., 176; 72 S. W., 822. There is a difference, however, in the obligations resting upon a corporation to pay the costs of litigation and counsel fees, between the cause, where the litigation is instituted by its officers, and when it is instituted in its behalf by a stockholder. In the former case, if the officers think it a prudent thing to do, to institute the litigation, the corporation is bound for the costs, although it may turn out, that the officers were mistaken. In the latter case, the corporation is not bound for the costs of the litigation, unless it results in a substantial recovery by the corporation. Louisville Bridge Co. v. Dodd, supra. This rule was adopted by the courts to prevent the destruction of the corporation by warring stockholders and those who would desire to involve them in litigation, by reason of their opinions, differing from the opinions of the officers, as to their proper management. The entire result of the litigation, in the case at

bar, was the determination in favor of the stockholder, that he had the right, by reason of his ownership of stock, to vote, in the election of directors of the corporation, and that the Board of Directors of the Burley Tobacco Society did not have the right to vote for him. This right of the stockholders to vote at the election of directors, seems to be a right personal to the stockholder. The corporation did not recover either money or property, as the result of the litigation. The stockholders recovered for themselves the voting power of their stock. In 2 Pomeroy on Equity Jurisprudence, Section 1091, it is said: "Whenever the acts of the directors do not consist of any misuse of the corporate property, or wrongful exercise of the corporate franchise, but are of such a nature that they directly and primarily affect the interest of the stockholders in their shares of stock, by diminishing its value or otherwise impairing their property rights in it, then the stockholders are directly injured and are primarily interested. As the *cestui que* trust whose rights have been violated, they must institute and maintain any equitable suits for relief against their defaulting trustees. The remedy is for their benefit and belongs to them alone. On the other hand, wherever the breach of trust consists of a wrongful dealing of any kind or in any manner with the corporate property or with the corporate franchise, the corporation itself is directly injured and is primarily interested."

In the case at bar, it must be concluded, that although the control of the corporation was in the hands of *de facto* officers, there was no wrongful misuse of the corporate property or wrongful exercise of the corporate franchise, as the allegations in the suits to such effect failed to be sustained. This is conclusive of that contention.

The acts of the directors complained of, or those assuming to be such, directly and primarily affected the interest of the stockholders in their shares of stock. The entire recovery was a recovery of the voting power of their stock by the stockholders, and the holding of an election by the stockholders, in which only the owners of about one-half of the stock participated. While the two complaining stockholders might well join all others with them in their suit, they were not necessarily obliged to do so, in order to obtain the relief for themselves.

The counsel for appellant and appellees cite a number of cases in this jurisdiction, the decisions in which turn

upon the provisions of Section 489, Ky. Statutes, and many of those cited from other jurisdictions are based upon a state of facts, which in this jurisdiction, would be controlled by the provisions of that statute, and are not in point, in this case, because no one can be heard to apply for contribution under that statute, except a legatee, distributee, devisee, or party in interest. Pepper, Exor., &c. v. Pepper, &c., 30 R., 460. If the clients of appellees were applying under the terms of that statute for contribution, in this case, their application would have to be denied, because the terms of that statute contemplate the recovery of a fund, in which all have a common interest, and no case is cited, in this jurisdiction or elsewhere, where a contribution has been decreed from those having a common interest in the fund, in favor of one who has maintained a suit for the common benefit of himself and those similarly interested, except where the result of the litigation has been to recover a fund or property, in which those ordered to contribute have an interest. Thirwell's Admr., &c. v. Campbell, 11 Bush, 163; Clark v. Pepper, 132 Ky., 192; Estill's Trustee v. Francis, 28 R., 225; Davis v. Feltman, 23 R., 1510; Strobel v. Borsig, 13 R., 398; Francis v. Million, 26 R., 42.

As a general rule, no one can be compelled to pay the fees of counsel, except the one who has contracted to do so, unless there is a statute applicable to the case, which provides otherwise. Before a corporation can be held to have contracted to pay the attorney for his services, who has instituted a suit for a stockholder, in behalf of the corporation, it must appear that the officers of the corporation have refused to institute suit for the corporation, upon proper demand, or that their interests are such or relations to the subject matter of the controversy or to the adversary party are such, that it would be a vain thing to make a demand of them, and they could not be reasonably expected to take proper care of the rights of the corporation, and in such a state of case, if the stockholder sets in motion the machinery of the law for the corporation and a sucessful suit is maintained and results in the recovery for the corporation, not for the stockholder, of something substantial, and the corporation receives the benefits of it, or the bringing into court a fund for administration or distribution, then a contract is implied, that the corporation will pay the fees of the attorneys for the stockholder, because the suit was for the corporation and it received

the benefits of it. As a result of the litigation, money or property must be recovered for the corporation, or a fund brought into or under the control of the court, belonging to the corporation, for administration or distribution. A search of the authorities fails to disclose a case, wherein a different rule has prevailed. Although, in some cases, cited by counsel, there are *dicta,* which seem to indicate a view contrary to the above, the great weight of authority sustains the conclusion at which we have arrived. Alexander v. Atlanta & West Point Ry., 113 Ga., 193, and the cases cited therein; Louisville Bridge Co. v. Dodd, *supra;* Ober & Sons Co. v. Macon Construction Co., 100 Ga., 635; Woodruff v. New York, &c. Ry. Co., 129 N. Y., 71. In the case, at bar, no recovery was had of either money or property for the corporation, and no fund was brought into or under the control of the court for administration nor distribution. There was no wrongful misuse of the corporation's property nor franchises sustained. There was no administration nor distribution of the assets of the corporation. The contention, that the appellees, by their efforts, for their clients, brought into or under the control of the court all the assets of the corporation, is not tenable, as the property of the corporation was at all times in its custody and so remained, when the litigation ceased, and the court expressly refused to take it under control, when it overruled two motions, after a hearing, for the appointment of a receiver. The defendants were, indeed, *de facto* officers, but the custody of the property was in the corporation, as the officers held it for the corporation and not otherwise, and were estopped to dispute the title or custody of the corporation of the property.

For the reasons stated, the judgment is reversed, and cause remanded for proceedings consistent with this opinion.