**MODERN OPTICS, INC., Appellant,**

v.

**Jesse BUCK, Appellee.**

No. 3724.

Court of Civil Appeals of Texas.

Waco.

May 19, 1960.

Rehearing Denied July 7, 1960.

Baker, Botts, Andrews & Shepherd, Houston, for appellant.

Bracewell, Reynolds & Patterson, Houston, for appellee.

TIREY, Justice.

This action is a shareholders derivative suit prosecuted by one of the eighty stockholders of Modern Optics, Inc., against Modern Optics, Inc., its President, Chairman of the Board and Executive Vice-President. The suit was filed by three minority stockholders. One of the plaintiffs sold his stock in the corporation after the suit was filed, and he was dismissed; another plaintiff voluntarily withdrew before the trial because he did not wish to

prosecute the suit. The trial was had without the aid of a jury and in the judgment we find substantially this recital: that plaintiff, individually, and as a representative of any class of shareholders of Modern Optics, Inc., and Modern Optics, Inc., do have and recover nothing of and from defendants, Virgil Hancock, Frank E. Webster and Murray Rex Arrowsmith; that the plaintiff, do have and recover of and from defendant, Modern Optics, Inc., his expenses and attorney's fees in prosecuting this suit; such expenses being fixed by the Court in the sum of $1,774.47, and attorney's fees in the trial of this case being fixed in the sum of $10,000, and taxed all costs against Modern Optics, Inc. The plaintiff excepted to that part of the judgment wherein the Court denied him any relief against defendants Webster, Hancock and Arrowsmith, and the defendant, Modern Optics, Inc., objected and excepted to the judgment entered against it. Defendant seasonably perfected its appeal to the First Appellate District and the cause is here on transfer. There is no statement of facts on file, and neither side called for findings of fact and conclusions of law, and none was filed. The decree is assailed on one point, it is:

"The trial court erred, as a matter of law, in entering judgment against the corporation for plaintiff's expenses and attorneys' fees, because the corporate defendant recovered nothing in the suit, and the record shows on its face that no relief sought by the suit was granted to the corporation as a result of the filing and prosecution of this lawsuit."

We quote substantially from paragraphs three and four of appellant's statement of the nature and the result of this suit.

In a twenty-page petition the plaintiff alleged numerous acts of fraud and misconduct on the part of the individual defendants and prayed that defendants be enjoined from certain activities during the pendency of the suit, and permanently enjoined from other activities, and asked that judgment be entered against the defendants for the use and benefit of the corporation for almost $200,000 in damages, allegedly resulting to the corporation from the alleged wrongs of the defendants. In addition, plaintiff prayed that he recover his costs including reasonable and necessary expenses. At a hearing on an application for temporary injunction, no relief was granted except to the extent suggested and agreed to by defendants for the purpose of maintaining the status quo during the pendency of the suit. This agreement was not in any way a recognition of any wrongdoing on the part of the defendant, or any right to recover either damages or injunctive relief, but was simply an agreement that the status quo would be maintained during the pendency of the litigation. We have previously stated the nature of the judgment. Appellee, in its reply says that the statement of the nature of the case by appellant is substantially correct with certain exceptions, and among these he states substantially:

(1) That plaintiff, in his petition, alleged a demand had been made upon the Board of Directors by him of the corporation to take action for and on behalf of the corporation against the individual defendants therein named for the purpose of recovering for and on behalf of the corporation certain valid claims which the corporation had against the individuals named, and that the Board wholly failed and refused to take any action and thereby required plaintiff to file this action on behalf of the corporation and all the shareholders;

(2) That in addition to alleging numerous acts of fraud and misconduct on the part of the defendants, also alleged certain fraudulent and wrongful business practices which had continued over varied and extended periods of time. Plaintiff further alleged that the individual defendants were in conspiracy and collusion with certain other members of the Board of Directors, and had set upon a course of action to

cause the corporation to pay to the defendant, Hancock, the sum of $75,000;

(3) The petition described at great length the practice which Hancock had followed, while being in control of the corporation for a period of years, and alleged the taking of over $100,000 of corporate funds for his own personal use and benefit, and that such practice had seriously impaired the corporate operation and caused it to operate under most difficult circumstances; that Hancock and Arrowsmith secretly and fraudulently shipped to one of the corporation's customers great quantities of lens, for which the corporation was not being paid, but instead, Hancock and Arrowsmith were appropriating the proceeds thereof for their own use and benefit. Plaintiff asked the court to enjoin temporarily the consummation of the threatened transactions;

(4) That after a two-day hearing by the Court on the right of the plaintiffs to a temporary injunction, that the defendants capitulated and agreed to the entry of an injunction whereby the defendants were restrained and enjoined from paying in cash the $75,000 to Hancock which had been authorized by a resolution and adopted by the Board of Directors; that said injunction further enjoined Hancock from selling or hypothecating in any way of any and all shares of stock then held by him and his wife in the corporation, or any stock which he might acquire until the suit was tried on the merits. Appellee contends that this course of action had the effect of obtaining security for the corporation to satisfy the claims asserted against Hancock. The injunction further enjoined the defendants from selling any treasury or unissued stock of the corporation to any parties to the suit in order to obviate any further unbalancing of stockholder control of the corporation. Appellant, in its brief, among other things says:

"The record in the case further reflects that no adjudication of wrongdoing of any type was ever made against any of the individual defendants, nor was any character of injunctive relief issued in the final decree. The only injunction obtained by this suit was an agreed injunction to maintain the status quo, while the suit was pending. This injunction did not include all the various aspects of relief prayed for in plaintiff's petition. No receiver was ever appointed, no audit was ever made, no officers were ever removed or enjoined from acting, no voting rights were denied.

"The extent of the injunctive relief granted on the temporary hearing was simply to preserve the status quo during the pendency of the lawsuit. Certainly, it cannot be contended that the preservation of the status quo at the time the lawsuit was filed constituted any benefit to the shareholders of the corporation, nor can it be said that it resulted in any recovery of any asset of the corporation."

We do not share appellant's views because of the recitations in the temporary injunction. As we understand the order granting the temporary injunction the parties consumed two days' time in presenting their evidence and argument to the court and defendants made certain recommendations and admissions as to what they were willing for the Court to place in the decree, but in so doing they specifically said that they were agreeable to such decree being entered, but that they were not admitting that there had been any improper action on the part of the corporation, or any of the defendants in this suit which required an injunction to be granted, but that they are willing that it be granted in the best interest of the company so that the rights of the opposing parties will not be jeopardized in any respect while waiting for trial on the merits. The Court, in its order on the temporary injunction, recited among other things:

"* * * that defendants have consented to the entry of the following

temporary injunction and that the plaintiffs have agreed to the following temporary injunction; and it further appearing to the Court that the plaintiffs are so entitled to said temporary injunction as herein granted, same being within the allegations and prayer of the plaintiffs' petition."

The Court then decreed:

(1) That defendants are expressly enjoined and restrained from paying in cash the $75,000 authorized pursuant to a resolution adopted by the Board of Directors of Modern Optics, Inc., at the meeting held on September 24, 1956, as a consideration for the assignment dated June 22, 1946, or Virgil H. Hancock's right, title and claim in and to a certain contract or memorandum of agreement by and between The Univis Corporation and Virgil H. Hancock, dated October 11, 1932, but defendants are expressly not enjoined nor restrained from crediting the sum of $75,000 on the books of the corporation against the loan account of Virgil H. Hancock, which carries an outstanding balance of $74,755.81;

(2) Enjoining during the pendency of this suit the defendant, Virgil H. Hancock, from selling, hypothecating, mortgaging or disposing in any way of any and all shares of stock now held by him or his wife in Modern Optics, Inc., or any stock which he might acquire in the company from this time until this lawsuit is tried on the merits;

 (3) Enjoining during the pendency of this suit the defendants from selling any of the treasury or unissued stock of Modern Optics, Inc., to any of the parties to this suit; provided that this order shall be subject to further order of the Court pending final trial of this suit upon proper notice and hearing, and subject to amendment by agreement of the parties to this suit; said writ to be accompanied by a true and correct copy of plaintiffs' petition.

This temporary order was entered on the 8th day of January, 1957, but stated that it became effective November 23, 1956. It appears to us that the recitations in the temporary injunction show that the corporation did get substantial gains from that order, and that the corporation's admission through its counsel that it agreed that the Court should make such order is without any significance, because the Court recites that the plaintiffs are entitled to said temporary injunction. Appellant relies on the following authorities to sustain its view: Rio Grande Fire Ins. Co. v. Herder, Tex.Civ. App., 180 S.W. 1150; 3 Hildebrand, Texas Corporations, Sec. 774; 10B Texas Jur., Corporations, Sec. 282, and Levin v. Martin C. Levin Investment Co., 1954, 123 Cal. App.2d 158, 266 P.2d 552; Burley Tobacco Co. v. Vest, 1915, 165 Ky. 762, 178 S.W. 1102; McArthur v. John McArthur Co., 1919, 39 Cal.App. 704, 179 P. 700; Alexander v. Atlanta & W. P. R. Co., 1901, 113 Ga. 193, 38 S.E. 772, 54 L.R.A. 305; Hildreth v. Western Realty Co., 1932, 62 N.D. 233, 242 N.W. 679; Joyce v. Congdon, 1921, 114 Wash. 239, 195 P. 29. We think appellant's decisions are not applicable to the peculiar factual situation that here exists. Going back to the temporary injunction, this matter consumed two days' time in November 1956, and it appears the case went to trial on the merits on the 29th day of January, 1959, and that the Court entered the final judgment on the 3rd day of August, 1959. So, it is obvious from the record made that the attorneys necessarily gave much time to the preparation of this case for trial, and that it remained on their docket for attention from the date it was filed on October 9, 1956, until final judgment was entered. We think it is well settled that in these cases where there is no statement of facts in the record that it is the rule that in the absence of a statement of facts it will be presumed where the transcript record is sufficient that the Trial Court's judgment is supported by the evidence. See statement of the rule by the Supreme Court in Smith v. Higginbotham, 138 Tex. 227, 158 S.W.2d 481, Com. of App., opinion adopted. See Point 4 on

page 485 of 158 S.W.2d, and cases there cited. Our Supreme Court has not seen fit to change the foregoing rule. From consideration of the instruments shown in the transcript and from the recitals contained in the order granting the temporary injunction, we are of the view that the transcript record is sufficient, and that the Trial Court's judgment is supported by the evidence. We think the record shows that the Trial Court gave much consideration to this cause and we think that such Court would not have entered the judgment it did and fixed the expenses and attorneys' fees in the amount of $10,000 against the corporation if the Court had not been of the view that such judgment was fair and just. Moreover, the amount of attorneys' fees awarded is not assailed, and the appellant is relying on one point only, which we have heretofore stated. In Schechtman v. Wolfson, 2 Cir., 244 F.2d 537, 540, we find this statement of the rule:

"The modern equity practice is to allow counsel fees to successful prosecutors of derivative suits although no judgment has been obtained if they show substantial benefit to the corporation through their efforts, * * *"

See also Pergament v. Kaiser-Frazer Corp., 6 Cir., 224 F.2d 80; Baker v. Seattle-Tacoma Power Co., 61 Wash. 578, 112 P. 647; Greenough v. Coeur D'Alenes Lead Co., 52 Idaho 599, 18 P.2d 288; Holthusen v. Edward G. Budd Mfg. Co., D.C.Pa.1944, 55 F.Supp. 945.

Surely the Trial Judge must have been of the view that the filing of the plaintiffs' suit and the prosecution thereof to final judgment was of benefit to the corporation; otherwise he would not have allowed the recovery of expenses and attorneys' fees. The foregoing rule was applied by our 5th Circuit in Cannon v. Parker, 152 F.2d 706, certiorari denied 327 U.S. 806, 66 S.Ct. 965, 90 L.Ed. 1031. See also 3 Tex.Jur.2d, Appeal and Error—Civil, Section 452; Flint v. Knox et al., Tex.Civ.App.1943, 173 S.W.2d 214, er. ref. w. o. m.; 3 Hildebrand,

Texas Corporations, Section 774 (1942), Pocket Part (1950); 10B Tex.Jur., Corporations, Section 282 (1958); "The Counsel Fee in Stockholders' Derivative Suits", by Geo. D. Hornstein, 39 Columbia L.Rev. 784, 798, 802, 807 and 809. See also 39 Columbia Law Review, pages 784, 802 and 807 and 809.

We think that this record supports the view that the plaintiffs' suit was of some benefit to the corporation, and since the amount awarded for expenses and attorneys' fees is not assailed, and since there is no statement of facts accompanying the record, we are of the view that we must sustain the implied findings of the Trial Court that such suit was necessary and that the Corporation benefited thereby, and affirm its judgment. Accordingly, the judgment of the Trial Court is affirmed.