## QUINN et al. v. BALDWIN et al.
### No. 6228.

United States Court of Appeals for the District of Columbia.

Argued Dec. 4, 1934.

Decided Jan. 7, 1935.

W. Gwynn Gardiner, I. Irwin Bolotin, and James M. Earnest, all of Washington, D. C., for appellants.

Benjamin S. Minor, Godfrey L. Munter, P. B. Cromelin, Howard W. Kacy, Swagar Sherley, Frederick DeC. Faust, and Charles F. Wilson, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a decree of the lower court dismissing a bill of complaint filed by appellants, as plaintiffs, having for its purpose the setting aside of certain deeds of conveyance and other relief.

The property conveyed by the deeds in question, hereinafter called "the property," consists of parts of lots 36 and 37 in Yeatman's subdivision of square 288, and is known as premises No. 740 Twelfth Street Northwest, in the city of Washington, D. C.

The appellants are the receivers of the Provident Relief Association, a corporation organized under the laws of the District of Columbia as a sickness and death benefits insurance company, and this suit is brought by them as such receivers.

The record includes part of the testimony heard by the trial court, also a stipulation of facts filed by the parties, and the court's findings and conclusions thereon. It appears that on January 7, 1920, John Brosnan, Jr., purchased the property in question for the consideration of $49,600, and received a deed of conveyance therefor, and that at or about the same time he secured a loan from a building association in the amount of $35,000, the proceeds of which he applied as part payment of the purchase price of the property.

On February 16, 1920, Brosnan, likewise for the consideration of $49,600, conveyed the property to Richard M. Parker and John N. Armstrong, as trustees, subject to the following express purposes and conditions, to wit: "To have and to hold the said land and premises, subject to the power of disposition hereinafter granted, in trust for the sole use and benefit of the Provident Relief Association of Washington, D. C., a corporation in said District, its successors and assigns, with full power in said parties of the second part and in the survivor of them, to sell, mortgage, lease, or otherwise dispose of said land and premises or any part thereof in fee simple, from time to time when and as they, the said trustees, or the survivor, shall be directed so to do in writing by the said Provident Relief Association, its successors or assigns, such direction to be evidenced and sufficiently attested by the signature of the president or vice president and the secretary for the time being of the said association and its corporate seal being affixed to any such deed, mortgage, lease or other conveyance, without any liability on the part of the purchaser to see to the application of the purchase money coming into the hands of the said trustees or the survivor of them."

On April 16, 1920, Parker and Armstrong, as trustees under the foregoing deed of conveyance, for a consideration of $50,188.50 reconveyed the property to Brosnan, subject to the incumbrances of record. In the deed of conveyance which was executed by the trustees, it was recited that: "The said trustees, grantors herein, being directed in writing by the Provident Relief Association to execute this conveyance and their authority so to do, being evidenced and sufficiently attested by the signature hereto of the vice president of said association, together with the seal of said association affixed as attested by its acting secretary." The deed of conveyance, in addition to the signature and acknowledgment thereof by the trustees, was evidenced and attested also by the signature of the Provident Relief Association by E. V. Avery, vice president, under the corporate seal of the association affixed thereto by E. V. Avery, as its acting secretary.

On October 23, 1920, Brosnan, for a consideration of $100,000, conveyed the property to the Terminal Commercial & Savings Bank, a corporation. On January 24, 1924, the Terminal Commercial & Savings Bank, as part of a contract whereby its affairs were liquidated, conveyed the property to Donaldson and Baden, as agents of the Commercial National Bank of Washington, D. C. On December 1, 1924, Donaldson and Baden conveyed the property to Mildred L. Davis, who upon the same day conveyed it by deed of trust to Donaldson and Johnson, trustees, to secure an indebtedness due to William H. Holloway upon certain promissory notes in the sum of $60,000. On January 20, 1925, Mildred L. Davis conveyed the property to Pickford and Porter, as trustees, to secure an indebtedness owing to G. Mearl Valentine in the sum of $20,000. By deed dated January 20, 1925, Mildred L. Davis conveyed the property to Maude M. Stevens, subject to the two trusts last mentioned aggregating $80,000. By deed dated January 20, 1925, Maude M. Stevens conveyed the property to John S. Egan, subject to the same incumbrances. By deed dated May 3, 1926, John S. Egan conveyed the property to Mildred L. Davis, subject to the incumbrances aforesaid. By deed of March 10, 1927, Mildred L. Davis, for a consideration of $90,000, conveyed the property to L. Whiting Estes, the present owner thereof. In payment of the purchase price Estes transferred to the vendor a certain piece of real estate valued at $30,000, and assumed and agreed to pay the indebtedness, amounting to $60,000, which was secured by deed of trust upon the property. On December 10, 1927, the Acacia Mutual Life Insurance Company, a corporation, purchased the Holloway notes calling for $60,000 secured by the trust deed aforesaid, paying therefor their full face value in the usual course of business without knowledge or notice of any

infirmity in the title of the mortgaged property, and the company is still the owner and holder of these notes.

In June 1926 the appellants were appointed as receivers for the Provident Relief Association, and on December 11, 1928, they began the present suit as such receivers in the Supreme Court of the District of Columbia. In their bill of complaint they alleged that whereas on the 16th day of February, 1920, Brosnan held the title to the property in his own name, nevertheless the property had been purchased by him with the funds of the Provident Relief Association; and that on April 5, 1920, when a deed of conveyance purporting to reconvey the property to Brosnan was executed by Parker and Armstrong as trustees for the corporation, attested by E. V. Avery as vice president and acting secretary, the deed was invalid and void because of the fact, as alleged, that Avery was not the vice president or acting secretary of the corporation at the time. They alleged also that no authorization or power was given by the board of directors of the corporation to Avery or to the trustees to execute and deliver the deed of conveyance to Brosnan; and that no consideration of any character was given by Brosnan to the trustees nor to the corporation for the execution of the deed; that accordingly the deed was void, inasmuch as the trustees could possess no authority beyond the conditions and limitations of the conveyance whereby they were appointed. They alleged furthermore that all of the parties named above as holders of the title, or as creditors secured by deed of trust upon the property, including the present owner, L. Whiting Estes, had actual or constructive notice of the fact that the deed to Brosnan purporting to be executed by the trustees was without consideration or authority and was totally void. The plaintiffs prayed for a decree setting aside the deed of the trustees to Brosnan, also the deed of trust from Davis to Donaldson and Johnson, the deed of trust securing the indebtedness of $60,000 alleged to be due to Holloway, the deed from Davis to Estes, and that Estes should be required to execute a proper deed necessary to reconvey the property to Parker and Armstrong as trustees for the use and benefit of the Provident Relief Association; and that if it be found that the property cannot be retransferred to the trustees free and clear of all liens and incumbrances, that a judgment be entered against the Commercial National Bank and Estes for the full value of the property, to wit,

$125,000; or that the Commercial National Bank be required to pay over to the trustees Parker and Armstrong the sum of $90,000 received by it for the property; and that upon final hearing, should the court find that the property cannot be returned to the plaintiffs or to the trustees, that a decree be entered against Parker and Armstrong, and also against Brosnan and Avery, for the value of the property as of the date when the deed of the trustees to Brosnan was executed and delivered.

In the findings of facts made and entered of record by the court, it appears that on April 5, 1920, when Brosnan repurchased the property from the corporation, he was not guilty of bad faith in any particular, and that the bona fides of the transaction and the legality of the deed to him from the trustees had never been assailed or questioned by the association or by any of its stockholders, officers, or creditors; and that the same had never been directly assailed or questioned by the plaintiffs herein until the filing of this suit; also that there was no evidence tending to show that in the transactions relating to the property as aforesaid either Parker and Armstrong, as trustees, or the Terminal Commercial & Savings Bank, or L. Whiting Estes, or any intermediate holder of the title, acted in any respect otherwise than in good faith without knowledge or notice of any irregularity (if any existed) in the transaction; and that the Acacia Mutual Life Insurance Company, purchaser of the trust notes aforesaid, was a bona fide holder thereof in usual course of business and for full value, and had no knowledge or information concerning any of the charges set out by plaintiffs in this case. The court also found that the action of Avery as acting secretary of the corporation in the attestation by her of the signature of the trustees to the deed of conveyance to Brosnan was valid, and that its validity had never been questioned by any officer, stockholder, creditor, or other person until after the appointment of the plaintiffs as receivers of the association. The court therefore entered a decree dismissing the bill of complaint; whereupon the present appeal was taken.

In passing upon the facts appearing in the present case, we feel constrained to express our disapproval of the manner in which Brosnan acted in the transaction involved herein. It is established by the testimony, as was found by the lower court, that Brosnan first purchased the property in

his own right and then sold it to the association at a time when he was its president and treasurer and owned or controlled all of its corporate stock except five shares, which stood in the name of minor employees of the association. He was therefore complete master of the corporation and his sale of the property to it and his subsequent repurchase of the property from it are alike subject to such condemnation as equity visits upon an officer of a corporation who enters into a contract with it wherein his own personal interests must necessarily conflict with the interests of the company. 7 R. C. L. 479, § 461 et seq. Such a contract, however, although subject to suspicion and in general to rescission, is not absolutely void, but is only voidable. It may be confirmed by the parties in interest by direct action on their part, or the right to contest it may be lost by the laches of such parties. Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328; Hammond v. Hopkins, 143 U. S. 225, 251, 252, 12 S. Ct. 418, 36 L. Ed. 134; Galliher v. Cadwell, 145 U. S. 368, 12 S. Ct. 873, 36 L. Ed. 738; Quirk v. Liebert, 12 App. D. C. 394, 403.

■ Upon a review of the record, we are convinced that the lower court was correct in holding upon the evidence that the plaintiff has failed to sustain the charge of bad faith upon the part of Brosnan when he repurchased the property from the company for substantially the same price as that for which he had previously sold it to the company. Also, that the present owner, Estes, had acted in good faith when he purchased it, and that he had paid a full price for it, without notice of any claim made by any person that the title was in anywise defective. It appears that the several deeds of conveyance above named were all promptly filed for record when executed, and that they were recorded in the records of deeds of the District of Columbia, and, also, that the respective grantees thereunder took open possession of the property at the time of the execution of the conveyances. Moreover, it is not denied that the Terminal Commercial & Savings Bank, when buying the property from Brosnan in 1920, had acted in good faith and paid a full consideration for the property without notice of any defect in the title of the property. It appears that at the time of the purchases made by the respective parties, beginning with the conveyance to the Terminal Commercial & Savings Bank in 1920, the record title was examined at the instance of the purchasers by various standard title insurance companies in the District of Columbia, all of whom certified to the validity of the title. The various conveyances were accepted thereupon by the purchasers as legal and valid.

■ We are also convinced that the lower court was correct in holding that the deed of conveyance made by the trustees to Brosnan in 1920 was a valid execution of the terms of their trust. At the time of the transaction the capital stock of the company consisted of 1,000 shares, which were held as follows: 498 shares by John Brosnan, Jr., as administrator of his father's estate; 497 shares by John Brosnan, Jr., in his own right; 4 shares by Thomas W. Bramhall, a brother-in-law of Brosnan; and 1 share by Eunice V. Avery. These persons were the only stockholders, and composed the board of directors of the corporation. Brosnan was its president and treasurer, and Avery its vice president and assistant secretary. Prior to the present transaction, to wit, in October, 1917, Bramhall was elected secretary of the association; but in the year 1918 he entered the United States Army and his active connection with the association then finally ceased. After that time he abandoned his office of secretary and took no part in the affairs of the corporation. Under these circumstances, Avery acted as secretary for the association and as such signed deeds of conveyance, deeds of trust, mortgages, minutes of stockholders' and directors' meetings, reports to the Superintendent of Insurance of the District of Columbia, and other papers requiring the signature of the secretary of the association. In the absence of Bramhall, Brosnan and Avery were the only acting stockholders and directors of the corporation, and by Brosnan's direction Avery served as secretary "for the time being," and the validity of her signature as such was never denied by any person interested in the association or its affairs prior to the filing of the present suit on December 11, 1928. We therefore consider her attestation upon the deed of conveyance executed by the trustees to Brosnan in 1920 to be valid and effective.

■ Moreover, we affirm the decision of the lower court upon the ground of laches in the bringing of the present suit. For in the present case Estes purchased the property in good faith relying upon the record title thereof in March, 1927, which was a date about seven years after the transaction in question and was subsequent to the appoint-

ment of the present receivers; and the Acacia Mutual Life Insurance Company purchased the trust notes aggregating $60,000 secured by a recorded trust deed upon the property on December 10, 1927, which was a year subsequent to the appointment of the receivers and more than seven years after the date of the deed to Brosnan. The record does not disclose any reasonable excuse for this long delay.

Various exceptions were taken to the court's rulings in the hearing of the case. We have examined them with care, but do not find it necessary to discuss them in detail. We find that the stipulation of facts by the parties and the findings of facts by the court fully sustain the conclusions of the lower court.

The decree of the lower court is affirmed, with costs.