George E. JOHNSON, Dwight D. Taylor, Franklin B. Tuttle, Plaintiffs,

v.

AMERICAN GENERAL INSURANCE COMPANY, Variable Annuity Life Insurance Company of America, Equity Annuity Life Insurance Company, Benjamin M. Woodson, Gus S. Wortham, and Harry C. Copeland, Jr., Defendants.

Civ. A. No. 3161–67.

United States District Court
District of Columbia.

Feb. 14, 1969.

Jerome M. Alper, Washington, D. C., for plaintiffs.

John J. Wilson, Washington, D. C., David T. Searls, Harry M. Reasoner and Travis C. Broesche, Vinson, Elkins, Searls & Connally, Houston, Tex., for defendants.

### MEMORANDUM–ORDER

GASCH, District Judge.

Plaintiffs filed the complaint in this case in two parts: part I is styled as a derivative action; part II as a class action. This matter came on for hearing on defendants' motions: (I) for summary judgment on count one of plaintiffs' complaint; (II) for an order requiring plaintiffs to amend their pleadings to eliminate allegations as to the representation of absent persons and allowing them to proceed in their individual capacities only; and (III), in the alternative, for an order determining and limiting the class and directing notice to the members of the class.[1]

### ALLEGATIONS

It is alleged that plaintiffs are minority stockholders in the Equity Annuity Life Insurance Company (EALIC) a variable annuity insurance company organized under Title 35 of the District of Columbia Code. Defendant Variable Annuity Life Insurance Company of America (VALIC) is similarly organized under Title 35 of the District of Columbia Code. EALIC and VALIC, nationwide competitors, are leaders in the relatively new and expanding field of variable annuity insurance.

Defendant American General Insurance Company of Houston, Texas, (American General), a Texas corporation qualified to do business in the District of Columbia, allegedly is a holding company which controls five life insurance companies and seven fire and casualty companies. It owns minority interests in three other life insurance companies. During the years relevant here, American General owned 34.3% of EALIC's capital stock. Persons associated with American General owned an additional 25.8% of EALIC's capital stock creating a combined control of approximately sixty percent.

Defendant Woodson is the president and a director of both American General and EALIC.[2] Five of EALIC's

1. No particular objection has been raised to the maintenance of the claims in count II as primary.

2. It appears that personal service on Woodson while in this courthouse on another matter was quashed by Judge Corcoran on June 21, 1968. It does not appear whether substituted or other service has been pursued and accordingly the effect of this factor on the suit is not now before the Court.

eleven directors are directors or officers of American General or its affiliated companies. Defendant Woodson owns 9,753 shares of EALIC's stock.

Rapid expansion diminished VALIC's capital. This brought pressure from the Superintendent of Insurance for the District of Columbia on VALIC to seek additional capital. American General, acting through President-Director Woodson, was responsive to VALIC's search and an agreement was established between them on May 5, 1967. Under part one of the agreement American General would purchase 1,325,000 shares (50%) of VALIC's capital stock for $12,735,000 ($9.61 per share) and VALIC would arrange to have Woodson become a director and chairman of the Board of VALIC. Under part two of the agreement and conditioned on the completion of part one of the agreement, American General, again acting through Woodson, would cause EALIC to sell all of its business, 250,000 capital shares, to VALIC in return for 250,000 shares of VALIC (quoted at 20⅝ to 21⅛ on 5/4/67).

It is generally alleged that Woodson, in effect wearing several "hats" at the same time, engineered these transactions from all sides without regard for EALIC's stockholders and with only the interests of American General, his true principal, in mind. Part two of the agreement has not been consummated. EALIC is still in existence.

## I.

Under Rule 56 of the Federal Rules of Civil Procedure, defendants may prevail on their motion for summary judgment of count one of plaintiffs' complaint only if it appears from the entire record that there is no genuine issue as to any material fact and only if on the undisputed facts the defendants are entitled to a judgment as a matter of law. In order to put the issue in focus, local rule 9(h) requires the movant to submit with his Rule 56 motion a particular statement of the material facts as to which there is no dispute. No rule 9(h) statement has been filed. Rather, the defendants have requested the Court to consider a recitation of "uncontroverted facts" appearing in their briefs in support of these motions as the statement required by rule 9(h).[3] To the extent possible the Court has done that.[4]

Plaintiffs, however, have challenged defendants' version of the material facts both in general and in the particular. "If one thing is clear about the case at bar, it is that material facts and the inferences to be drawn therefrom are in issue."[5] The Court agrees. Moreover, in this case it appears that the legal issues will in part turn on elements such as fiduciary duties, duties of loyalty and conflicts of interest, which elements require for their just resolution a scrutiny of the inferences to be drawn from the facts and from those presenting them.[6] In regard to antitrust litigation the Supreme Court has stated:

> We believe that summary procedures should be used sparingly in complex * * * litigation where motive and intent play the leading roles, the proof is largely in the hands of the alleged

3. Brief for defendants in support of motions (I), (II), and (III) at 2, filed August 29, 1968.

4. This Court's crowded calendar and central assignment system, which often result in several judges hearing separate issues in even complex cases, emphasize the need for concise 9(h) statements. Failure to provide such statements may be fatal to the delinquents' position; Thompson v. Evening Star Newspaper Co., 129 U.S.App.D.C. 299, 394 F.2d 774, 777 (1968). In this case the Court has exercised its discretion to consider the position of the parties since it appears

some specific direction must be given to the narrowing of the issues if the case is to proceed expeditiously.

5. Brief for plaintiffs in opposition to motions (I), (II) and (III) at 7, filed October 15, 1968.

6. Greene v. Allen, 35 Del.Ch. 242, 114 A. 2d 916 (Ch. 1955) rev'd sub nom. Johnston v. Greene, 35 Del.Ch. 479, 121 A.2d 919 (Sup.Ct.1956). See, Mayflower Hotel Stockholders Protective Committee v. Mayflower Hotel Corp., 84 U.S.App.D.C. 275, 173 F.2d 416 (1949), 89 U.S.App. D.C. 171, 193 F.2d 666 (1951).

conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.' * * * [7] (citations omitted).

For these reasons the Court is at this time, on this state of the record, reluctant to find the material facts undisputed and accordingly, denies this part of defendants' motion for summary judgment.

Alternatively, the defendants have requested the Court to treat their motion as one in the nature of a motion to dismiss. Defendants argue that regardless of the facts, or assuming *arguendo* that the facts plaintiffs allege are true, defendants are entitled, as a matter of law, to a dismissal of count I of the complaint on either of two theories.

■ First, defendants argue that plaintiffs are now, on the eve of the consummation of the challenged corporate transactions, precluded from bringing this action since, rather than earlier seeking an injunction, they "deliberately chose to forego any type of equitable proceeding to prevent the consummation * * * of the transaction, choosing instead to protect their interests by suit for damages on behalf of the individual stockholders." [8] The Court is unable on the complex and factually contradicted record before it to find either that the plaintiffs made such a decision or, even in the event they did, that such a decision would preclude them from changing their strategy from negotiation on personal claims to suit on both personal and derivative claims.[9] It appears that this is a matter within the discretion of the Court.[10] Noting the plaintiffs allege that they sought all reasonable remedies within the corporate structure and that another stockholder, James K. Sullivan, unsuccessfully sought an injunction in Civil Action 1807–67 to prevent the holding of the stockholders meeting at which the agreement now challenged was subsequently allegedly approved, at this stage, the Court will not on this ground deny the plaintiffs the opportunity to proceed.

Second, defendants assert that plaintiffs cannot maintain a derivative action "[b]ecause it is clear that attacks by minority shareholders upon mergers or sales of assets ratified by the shareholder majority involving assertions of direct injury to the minority shareholders and do not injure the corporation as such * * *." [11] While this proposition has support among the authorities, it is not a statement which the Court would characterize as "clear" or dispositive of the issue.[12]

■ Thus, plaintiffs' complaint is not limited to grievances of the minority against the majority. To compel a dismissal here, defendants' statement of the

---

7. Poller v. Columbia Broadcasting System, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

8. Motions of defendants for summary judgment at 2, filed August 29, 1968.

9. See notes and text *infra* at note 12.

10. *See generally* Note, 70 A.L.R. 53 (1931) and Quinn v. Baldwin, 64 App.D.C. 133, 75 F.2d 652 (1935) where laches was a bar.

11. Brief for defendants, *supra*, note 1 at 16.

12. *See, e.g.*, Borak v. J. I. Case Co., 317 F.2d 838 (7th Cir. 1963) in which plaintiffs *wished* their complaint characterized as personal, defendants resisted arguing that it could *only* be derivative and the court observed that assuming the allegations of the complaint to be true:

> We think the trial court failed to recognize the principle that the same allegations of fact might support either a derivative suit or an individual cause of action by shareholders. We think count 1 of the complaint adequately states a cause of action for the redress of rights individual to the Case stockholders.

*Id.*, at 845. *Compare* Schiff v. RKO Pictures Corp., 34 Del.Ch. 329, 104 A.2d 267 (1954) *with* Seagrave Corp. v. Mount, 212 F.2d 389 (6th Cir. 1954).

law would have to comprehend that attacks by minority shareholders upon mergers or sales of assets ratified by the majority can *"only"* be assertions of direct injury. As a general proposition that is incorrect.[13] The operative word implied in defendants' statement is * * attacks * * * *"which"* involve assertions of direct injury. As indicated earlier, the Court cannot at this stage find the facts which would bring this case within the theory defendants assert.

■ Moreover, defendants' theory assumes particular facts, such as the lawfulness of the ratification, which, while they may be true, have not at this stage of the proceeding been established.[14]

In a variation of this argument, defendants assert that the same injury cannot be both personal and derivative.[15] To the extent this means that the same single injury arising from the breach of a single duty cannot be both personal and derivative, this is probably correct.[16] Here, however, as will be more fully developed later, there is not one but several duties allegedly breached and not one but several injuries claimed. Again, defendants imply that plaintiffs "realistically" only have one grievance. Again, the Court will not at this stage ignore that which plaintiffs state as their grievances and argue as their theories. To do that would be "unrealistic."

Defendants cite several cases which indicate that where there has been a sale of the corporate assets or a merger, derivative claims will not lie since logically and practically there is no entity remaining from which a claim may be derived.[17] Here defendants assert the total assets of the corporation have been transferred and that it has filed a Form 966 Information Return for Corporate Dissolution or Liquidation with the Internal Revenue Service. This position has some merit where a court is in a position to view the facts "realistically" and when the proceedings reach the stage in which the court assumes an active role.[18] Plaintiffs, however, on whose allegations the Court must now depend, maintain that, although EALIC is no longer operating fully, it has not ceased to exist because the challenged transactions were suspended at the outset of this suit.[19]

■ Skillfully, defendants have pressed the broader argument that regardless of, or assuming, plaintiffs' factual allegations, the theories of plaintiffs' complaint do not meet the general test of derivative claims.[20] Defendants place particular emphasis on whether the relief sought is relief which would inure directly to the corporation (a derivative action) or whether the relief would go directly to the stockholder (a personal or primary action).[21] Plaintiffs, it is argued, are merely minority stockholders who do not object to the challenged

---

13. *Id.* Note, 40 Calif.L.Rev. 127 (1952).

14. Ratification or laches may on certain facts be a bar: *e.g.*, Quinn v. Baldwin, 64 App.D.C. 133, 75 F.2d 652 (1935).

15. Citing *Borak*, *supra*, note 12.

16. *See*, Glenn, The Stockholders Suit—Corporate and Individual Grievances, 33 Yale L.J. 580 (1924).

17. Citing *e.g.*, Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967). *But see*, United States v. Maryland & Virginia Milk Producers, Inc., 145 F.Supp. 374 (D.D.C.1956).

18. It is also apparent, however, that a "realistic" view of the facts may encourage a derivative suit even where a corporate death has occurred: Glenn, The Stockholders Suit—Corporate and Individual Grievances, *supra*, note 16 at 593; United States v. Maryland & Virginia Milk Producers, Inc., *supra*, note 17.

19. *See*, California Labor School, Inc. v. Subversive Activities Control Board, 116 U.S.App.D.C. 180, 322 F.2d 393 (1963).

20. Relying on *e.g.*, Zahn v. Transamerica Corp., 162 F.2d 36, 172 A.L.R. 495 (3d Cir. 1947); Lebold v. Inland Steel Co., 125 F.2d 369 (7th Cir. 1941).

21. Relying on Schreiber v. Butte Copper & Zinc Co., 98 F.Supp. 106, 112 (S.D. N.Y.1951); Abelow v. Symonds, 38 Del. Ch. 572, 156 A.2d 416, 418 (1959).

transaction except insofar as they may not receive as much for their individual shares as they would hope to.[22] The relief they propose is not that the corporation be returned to its full operating capacity, but rather that they receive more, personally, for their stock.[23]

Plaintiffs, on the contrary, maintain that the test of whether an action is derivative or primary is not phrased in terms of the relief sought but turns on whether the injury to be redressed is one to the corporation or to the individual stockholder.[24] Moreover, they argue, their statements as to relief were merely suggestions and that they favor any form of relief which will compensate the injuries.

 Both statements of the test are partially correct. A review of the authorities indicates that courts have wide discretion in interpreting whether a complaint states a derivative or primary action.[25] The tests suggested by scholars and variously applied by other courts have been stated as broadly as: whether the injury is to the corporation directly,[26] or to the stockholder personally;[27] whether the injury results from the breach of a duty owed to the corporation or to the stockholder personally;[28] and whether the relief sought would go to the corporation directly or to the individual stockholder.[29] To be useful, therefore, these general statements must necessarily be supplemented by the results of cases.

 In this connection precedent indicates that it is the existence and implications of "duties" which are the paramount considerations. Thus, it has been held that the same set of facts may give rise to several claims, some of which are personal and some of which are derivative[30] when there are duties owing both to a corporation and to a stock-

22. Defendants cite letters from plaintiff Johnson and his attorney to defendant Woodson objecting to their "discriminatory" treatment as minority shareholders. These letters are indications that plaintiffs felt their cause to be primary. In count II of the complaint they have alleged primary actions. This does not necessarily foreclose bringing derivative actions as well. See notes 30, 31, *infra* and text and notes 12 and 13, *supra*.

23. Citing as *"See also"* Sobel v. Whittier Corp., 95 F.Supp. 643 (E.D.Mich.1951).

24. Relying on *e.g.*, Borak v. J. I. Case Co., *supra*, note 12; Glenn, The Stockholders Suit—Corporate and Individual Grievances, *supra*, note 16.

25. *E.g.*, Borak v. J. I. Case Co., *supra*, note 12. *See, e.g.*, Note, 40 Calif.L.Rev. 127 (1952); 2 Barron & Holtzoff Federal Practice and Procedure § 564 (Wright ed.); 3A Moore Federal Practice ¶ 23.16; 1 Fletcher, Corporations, § 36 (1963).

26. *See* Schreiber v. Butte Copper & Zinc Co., *supra*, note 21. *Compare* Liken v. Shaffer, 64 F.Supp. 432 (N.D. Iowa 1946) *with* Watson v. Button, 235 F.2d 235 (9th Cir. 1956).

27. Ritchie v. McMullen, 79 F. 522 (6th Cir.), cert. denied 168 U.S. 710, 18 S.Ct. 945, 42 L.Ed. 1212 (1897).

28. Gordon v. Elliman, 306 N.Y. 456, 459, 119 N.E.2d 331, 334 (Ct.App.1954).

29. Swanson v. Traer, 354 U.S. 114, 77 S. Ct. 1116, 1 L.Ed.2d 1221 (1957). Defendants cite Zahn v. Transamerica Corp., *supra*, note 20, for the proposition that whether there exists proportionate equality of injury to all shareholders is one of the best criteria of a derivative claim and that a shareholder's complaint of unequal treatment is non-derivative. Southern Pacific Co. v. Bogert, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099 (1919). This has been implied in cases such as *Zahn* where plaintiff sought to press his claim primarily since, for instance, he was not a shareholder at the time of the challenged events and could *not* pursue it derivatively. *Zahn, supra*, 162 F. 2d at 48. These cases emphasize the significance of undisputed facts and their implications. See cases cited notes 30 and 31, *infra*, indicating that some circumstances may support both derivative and primary claims.

30. *See e.g.*, Borak v. J. I. Case Co., *supra*, note 12; Mayflower Hotel Stockholders Protective Committee, *supra*, note 6; Bennett v. Breuil Petroleum Corp., 34 Del. ch. 6, 99 A.2d 236 (1953); Glenn, The Stockholders Suit—Corporate and Individual Grievances, *supra*, note 16; Note, Calif.L.Rev., *supra*, note 13; Note, 167 A.L.R. 279 (1947).

holder personally.[31] Similarly, because directors as well as dominant stockholders stand in a fiduciary relationship to the corporation,[32] derivative suits may be maintained to remedy breaches of the duties arising from those relationships.[33] Moreover, where a suit is logically derivative in nature but, for instance, the overwhelming majority of the stockholders have also breached a duty perhaps in one of their dual capacities as directors and stockholders, courts have fashioned corporate relief which benefits only the minority, personally.[34]

Thus, focusing on the existence and implications of duties as the keys to proper characterization, considering the available options indicated by the precedents noted above and treating where necessary the facts alleged by the plaintiffs as true, the Court has examined the theories which appear to be asserted by plaintiffs' complaint to determine whether, as a matter of law, and under modern pleading[35] they may assert derivative causes of action.

In their complaint and motion in opposition to defendants' motion for summary judgment, plaintiffs allege that Director-President Woodson engaged in a course of conduct which necessarily produced a "conflict of interests" and which resulted in damage to EALIC. It is clear that a director owes a fiduciary duty to his corporation because of his position of special trust.[36] The often quoted standard related by Judge Cardozo is applicable here:

"Many forms of conduct permissible in a workaday world for those acting at arms length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honestly alone, but the punctilio of an honor most sensitive, is the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions."[37]

Woodson, president and a director of EALIC, allegedly breached this duty of loyalty to his corporation in part by favoring American General and sacrificing EALIC while representing both in the challenged transactions. The duty allegedly breached was one owing to the corporation, not to the stockholders directly and not to plaintiffs personally. Correspondingly the injury alleged is to EALIC directly and to the plaintiffs

31. Ritchie v. McMullen, *supra*, note 27. *See* Mayflower Hotel Stockholders Protective Committee, *supra*, note 6.

32. *E.g.*, Chenery Corp. v. S.E.C., 75 U.S. App.D.C. 374, 128 F.2d 303 (1942).

33. Perlman v. Feldmann, 219 F.2d 173, 175, 50 A.L.R.2d 1134 (2d Cir. 1955). *See* Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); Southern Pacific Co. v. Bogert, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099 (1919).

34. Bellevue Gardens, Inc. v. Hill, 111 U.S.App.D.C. 343, 297 F.2d 185 (1961); Perlman v. Feldmann, *supra*, note 33, 219 F.2d at 178. *See* Southern Pacific Co. v. Bogert, *supra*, note 33. *See generally* Note, 69 Harv.L.Rev. 1314 (1956). Because the characterization of a suit as derivative or primary turns on duties whose implications may be subtle, a court may when it appears from the development of the facts that the derivative claim is not appropriate, dismiss that claim and/or characterize it as personal. *E.g.*, Borak v. J. I. Case Co., 317 F.2d 838, 845, n. 7 (7th Cir. 1963).

35. *E.g.*, Dioguardi v. Durning, 139 F.2d 774 (2d Cir. 1944).

36. *E.g.*, Perlman v. Feldmann, *supra*, note 33. *See*, Murphy v. Washington Am. League Baseball Club, Inc., 116 U.S.App. D.C. 362, 324 F.2d 394 (1963); *Hill*, *supra*, note 34; Helms v. Duckworth, 101 U.S.App.D.C. 390, 249 F.2d 482 (1957); McKay v. Wahlenmaier, 96 U.S.App.D. C. 313, 226 F.2d 35 (1955); *Mayflower Hotel*, *supra*, note 6; *Chenery Corp.*, *supra*, note 32; and *compare* these *with* Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 23 L.Ed. 328 (1875).

37. Meinhard v. Salmon, 249 N.Y. 458, 459, 164 N.E. 545, 546, 62 A.L.R. 1 (Ct. App.1928).

only indirectly.[38] Relief could go to the corporation or to the plaintiffs depending on the development of the particular facts.[39] The authorities indicate that such a complaint may be maintained derivatively.[40] Moreover, the resolution of the issues thus raised turns closely on the reasonable inferences to be drawn from the particular facts.[41]

■■■■ Plaintiffs also argue that in putting the challenged transactions together, Woodson and his associates circumvented the lawful procedures, including voting procedures, of the corporation. They allege that a board of directors meeting in which the plan was approved was improperly called and that a majority or a quorum of qualified directors did not participate. Similarly, a stockholders meeting at which the plan was allegedly ratified was defective. As a result, Woodson acted "ultra vires" and contrary to his express duty to the corporation to conduct its affairs according to established procedures. That these acts may also violate duties which may be owing to the shareholders personally[42] does not diminish the breach of a duty running to the corporation, except insofar as the doctrine of ratification

may apply.[43] Here, however, the shareholders meeting is challenged as well. In fact the general rule is that a shareholder has no general right of action against a director who defrauds or mismanages a corporation because the primary duty breached is to the corporation even when the effect reaches the value of the shareholders stock.[44] It is the corporation which has the right of action; the derivative suit is the means.[45]

Plaintiffs also assert claims against American General. They allege that American General, by virtue of its control, particularly through President-Director Woodson, had a fiduciary duty to EALIC and that duty was breached by creating and then exercising against EALIC a conflict of interest, by strengthening a competitor, by discriminating against EALIC, by committing waste and by denying EALIC a corporate opportunity.[46]

■■■■ A derivative suit is in essence nothing more than a suit by a beneficiary of a fiduciary to enforce a right running to the fiduciary.[47] Here, the stockholders of EALIC are suing on its behalf to remedy the breach of a duty owed the corporation by those controlling

38. See text at note 30, supra.

39. See text at note 34, supra.

40. See, Pepper v. Litton, supra, note 33; Higgins v. Shenango Pottery Co., 279 F.2d 46 (3rd Cir. 1960); Perlman v. Feldmann, supra, note 33; Seagrave Corp. v. Mount, supra note 12; Irving Trust Co. v. Deutsch, 73 F.2d 121 (2d Cir. 1934), cert. denied 294 U.S. 708, 55 S.Ct. 405, 79 L.Ed. 1243 (1935); American Investment Co. of Ill. v. Lichtenstein, 134 F.Supp. 857 (E.D.Mo.1955); Abrams v. Allen, 297 N.Y. 52, 74 N.E.2d 305, 173 A.L.R. 671 (Ct.App.1947); Albert A. Volk Co. v. Fleschner Bros., 60 N.Y.S.2d 244 (Sup.1945); Guth v. Loft, Inc., 23 Del.Ch. 255, 5 A.2d 503 (1939).

41. Johnston v. Greene, supra, note 6 (Sup. Ct.) 121 A.2d at 923 (found no violation but stated "whether or not the director has appropriated for himself something that in fairness should belong to his corporation 'is a factual question to be decided by reasonable inference from objective facts.'")

42. A shareholder need not sue derivatively, or even representatively, to enjoin "ultra vires acts" where it is established that the acts violated the charter-contract to which the shareholder is a party. Alexander v. Atlanta & West Point R. Co., 113 Ga. 193, 38 S.E. 772, 54 L.R.A. 305 (1901).

43. See Kerbs v. California Eastern Airways, 33 Del.Ch. 69, 90 A.2d 652, 34 A.L.R.2d 839 (Sup.Ct.1952).

44. Smith v. Bramwell, 146 Or. 611, 31 P. 2d 647 (1934).

45. E.g., Keenan v. Eshleman, 23 Del.Ch. 234, 2 A.2d 904, 120 A.L.R. 227 (Sup. Ct.Del.1938). See Geddes v. Anaconda Copper Mining Co., 254 U.S. 590, 41 S. Ct. 209, 65 L.Ed. 425 (1919).

46. The relationship of Woodson and American General is most significant: e.g. Perlman v. Feldmann, supra, note 40.

47. Goldstein v. Groesbeck, 142 F.2d 422, 154 A.L.R. 1285 (2d Cir. 1944).

it. That such a duty exists, has long been established. In Pepper v. Litton, the Supreme Court stated:

> A director is a fiduciary * * *. So is a dominant or controlling stockholder or group of stockholders. * * Their powers are powers in trust. * * * Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein.[48]

Accordingly, these claims may be maintained derivatively.[49]

■■■ Finally, plaintiffs argue that Woodson is personally liable for participating in an "ultra vires" act to the detriment of the corporation and for being pecuniarily interested in corporate transactions in violation of 35 D.C.C. §§ 526, 530 (1967). It is logical that such claims should be maintainable as part of a derivative action.[50] No cases appear to the contrary.

Thus, in this case, which has become complex procedurally as well as factually, defendants argue that a realistic review of plaintiffs' allegations indicates that the claims are only personal. Defendants' position, with which the Court agrees, is that a "realistic" review is not yet possible since the facts are in dispute and a revelation of the implications of those facts plaintiffs assert must await further development. It does appear from the facts alleged that the defendants owed duties both to the corporation and to the plaintiffs personally. Whether those duties were breached

is not now before the Court. All that is held here is that since no election between derivative and primary action is required, since as general propositions of law, the allegations of count I may be maintained derivatively, and since the facts are too contested to determine the "realities" of the situation, the Court will not at this stage strike plaintiffs' derivative claims.

For the foregoing reasons, defendants' motion for a summary judgment of count I of plaintiffs' complaint will be denied at this time.

## II.

Defendants' second motion is for an order requiring the plaintiffs to amend their pleadings to eliminate allegations as to representation of absent persons and allowing them to proceed in their individual capacities only. In part two of their complaint, plaintiffs purport to bring an action "for themselves and on behalf of all other stockholders of EALIC, as a class, for actions by the defendants affecting them and their rights as stockholders of EALIC." [51]

Rule 23 sets forth four threshold criteria for the maintenance of such a suit.[52] In essence these criteria relate to the definition of the class:

> * * * (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs allege that they represent the class of all stockholders, approximately one hundred persons, making joinder impractical. Defendants argue that since

---

48. Pepper v. Litton, *supra*, note 33, 308 U.S. at 306, 60 S.Ct. at 245.

49. *See* Lincoln Stores v. Grant, 309 Mass. 417, 34 N.E.2d 704 (1941), and text and cases cited note 40, *supra*.

50. But see note 2, *supra*.

51. Plaintiffs' complaint at 14, filed Dec. 13, 1967.

52. Rule 23(a), Fed.R.Civ.P. (1966). *See* Note, 36 Geo.Wash.L.Rev. 1150 (1968); Cohn, The New Federal Rules of Civil Procedure, 54 Geo.L.J. 1204 (1966); Note, 51 Va.L.Rev. 629 (1965).

in the second cause of action plaintiffs complain of breaches of duty to the minority stockholders, in part by the majority, all stockholders cannot be in the same class. Logically this is irrefutable.

■ It appears, moreover, that the second part of plaintiffs' complaint contemplates more than merely an action against the majority shareholders. In part, it appears that the plaintiffs complain that the directors breached their fiduciary duty, not only to the corporation (discussed in Part I, *supra*), but separately to the shareholders not to use their positions for their own personal advantage to the direct detriment of the stockholders individually.[53] A breach of this or similar duties unquestionably gives rise to a cause of action by the shareholders in their own right.[54] The defendants the plaintiffs seek to charge, however, are also stockholders. Patently plaintiffs cannot seek to represent defendants even though defendants logically may have been acting in different capacities.[55]

■ Plaintiffs' definition of the class, therefore, is unacceptable. This however, does not require a dismissal of the class action.[56] The Court notes with approval the language cited from the SEC Amicus Brief in Dolgow v. Anderson, 43 F.R.D. 472, 492 (E.D.N.Y. 1968):

> To effectuate the purpose of the securities laws, courts should employ the full measure of the discretion granted by the Rule, whenever a fair reading of the complaint permits, to define classes of injured investors in a manner which will permit utilization of the class action procedure.

The same principles apply to general corporate law.[57] Indeed the rule was formulated in part to give practical meaning to legitimate stockholder rights.[58] Thus, the Court will not finally at this time strike the class action.

At this time, however, the Court is also not in a position to define the class for the plaintiffs. Part two of plaintiffs' complaint is undifferentiated in terms of the particular duties allegedly breached by particular defendants. It is apparent that the plaintiffs cannot represent all of the stockholders since some of them are defendants in some of the complaints alleged. It is not apparent whom, in the alternative, plaintiffs might seek to represent and on which causes of action they might all be consistently represented. Thus, this does not appear to be a situation in which the Court can fairly narrow the claims.[59]

Accordingly, plaintiffs' allegations as to the representation of all stockholders will be stricken without prejudice for them to amend their complaint as to the particular personal claims they seek to assert against whomever of the defendants they wish to charge.[60] Part of the hearing held on these motions now before the Court was devoted to the Rule 23 problem. Another more complete hearing will be required by the trial judge on the amended pleadings. At that time the parties should be prepared to provide the Court with particular information as to the number of stockholders and their relative positions of legal interest. The Court notes that some information has already been filed and will be relevant to any amended class action the plaintiffs may seek. Of undoubted particular interest will be the legal position, both in regard to standing and in regard to the requirements of common legal theory, of the shareholders who have already exchanged their

---

53. *E. g.*, Borak v. J. I. Case Co., *supra*, note 12, citing *e. g.*, Luther v. C. J. Luther Co., 118 Wis. 112, 94 N.W. 69 (1903).

54. *Id.*

55. Dolgow v. Anderson, · 43 F.R.D. 472, 491 (E.D.N.Y.1968).

56. *Id.* at 492.

57. *Id.* at 484.

58. *Id.*

59. *See generally, Dolgow, supra*, note 55.

60. *Id.*, at 501. Rule 23 provides considerable flexibility in the handling of class problems. Note, 36 Geo.Wash.L.Rev. 1150, 1152 (1968).

stock (allegedly 73) and those who have already filed disclaimers of interest in the litigation (57) with the defendants.[61] In regard to the latter, the Court notes that while these disclaimers are not necessarily substitutes for the notice provisions of Rule 23 since the Court is unaware of the circumstances surrounding their solicitation, they do raise substantial doubt as to the size of a class which may finally be able to proceed.[62]

In regard to the former, those who have changed their position by exchanging their stock, there should be a development of the issue of whether their legal position is antagonistic to those seeking to represent them so that the plaintiffs cannot "fairly and adequately protect [their] interests * * *" in the sense of Pomierski v. W. R. Grace Co.,[63] or whether as in fraud cases such as Dolgow v. Anderson, there is no difference which would affect the representation.[64]

Accordingly, that part of defendants' motion II which requests the Court to strike the class action is granted, but without prejudice to the plaintiffs' to amend their complaint.

### III.

 Defendants' third motion is premature at this stage.

For the foregoing reasons, it is by the Court this 14th day of February, 1969.

### ORDERED:

(1) That defendants' motion for summary judgment or in the alternative to dismiss part I of plaintiffs' complaint (the derivative action) be and the same hereby is denied;

(2) That defendants' motion to strike the allegations as to the representation of absent persons (the class action) be and the same hereby is granted without prejudice to the amendment of the complaint by the plaintiffs;

(3) That defendants' motion for an order allowing the plaintiffs to proceed in their individual capacities only be and the same hereby is denied; and

(4) That defendants' motion for an order determining and limiting the class and directing notice to its members be and the same hereby is denied as premature without prejudice to its renewal.

---

61. *Compare Dolgow, supra,* note 55, *with* Fischer v. Kletz, 41 F.R.D. 377 (S.D. N.Y.1966) *with* Pomierski v. W. R. Grace & Co., 282 F.Supp. 385 (N.D.Ill.1967) and *see* Note, 36 Geo.Wash.L.Rev. 1150 (1968).

62. *Fischer, supra,* note 61, 41 F.R.D. at 386.

63. 282 F.Supp. 385 (N.D.Ill.1967).

64. *Supra,* note 55. The theory of Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968), also merits consideration here.